ALFRED W. CONYES, Respondent, *v.* OCEANIC AMUSEMENT COMPANY, Appellant.

**Master and servant — assumption of risks by servant — servant cannot recover in common-law action when it does not appear that master failed to supply him with safe and proper appliances and reasonably competent fellow-servants.**

1. Under the common-law rule a servant, in the work upon which the master employs him, assumes as part of the ordinary risks attendant upon, or implied from the nature of, the work, such as arise from the possible negligence of competent fellow-servants.

2. Plaintiff while employed by the defendant as one of the performers in a spectacular play and realistic show, was injured by a fall resulting from the breaking of a rope which was used by him in the performance. The safety of defendant in that respect depended largely upon care and judgment in determining when the rope had been so worn as to make it unsafe. This rested in the vigilance of plaintiff's co-employees and fellow-servants, any one of a number of whom might have changed the rope, a quantity of which was provided for that purpose. *Held*, that it does not appear that the defendant failed to provide the plaintiff with reasonably safe and proper means to perform his act, or with reasonably competent fellow-employees and performers, and hence he cannot recover.

*Conyes* v. *Oceanic Amusement Co.*, 132 App. Div. 933, reversed.

(Argued May 18, 1911; decided June 16, 1911.)

APPEAL from so much of a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 12, 1909, as affirms in part a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and facts, so far as material, are stated in the opinion.

*A. Berton Reed* for appellant. The plaintiff failed to make out a cause of action. (*Hudson* v. *O. S. S. Co.*, 110 N. Y. 625; *La Croy* v. *N. Y., L. E. & W. R. R. Co.*, 132 N. Y. 570.) The mere breaking of the rope, unexplained, does not create a cause of action. The doctrine

of *res ipsa loquitur* does not apply. (*Vogel* v. *A. B. Co.*, 180 N. Y. 373; *Ivers* v. *M. D. Co.*, 84 App. Div. 27; *Burns* v. *O. S. Co.*, 188 N. Y. 175; *Damjanovic* v. *H. H., etc., Co.*, 119 App. Div. 12; *Quigley* v. *Levering*, 167 N. Y. 58.) There is no foundation in law for plaintiff's claim that defendant failed to furnish him with safe appliances. (*Cregan* v. *Marton*, 126 N. Y. 568; *Dingley* v. *Star Knitting Co.*, 134 N. Y. 552; *Neubamer* v. *N. Y. & L. E. R. R. Co.*, 101 N. Y. 606; *Vogel* v. *A. B. Co.*, 180 N. Y. 373.)

*Frederick N. Van Zandt* for respondent. Defendant's negligence in failing to supply plaintiff with a proper rope with which to perform his special and dangerous act, and in failing to test it immediately before the act which resulted in his injury, was clearly established. (*Collins* v. *Butler*, 179 N. Y. 156.)

Chase, J. The plaintiff in 1904 while employed by the defendant as one of the performers in a spectacular play and realistic show known as " Fighting the Flames " at " Dreamland," Coney Island, had a fall resulting in personal injuries. While engaged as a performer in the same play in 1905 he had another fall resulting in further personal injuries. This action is brought to recover damages for such injuries.

. The jury at the trial rendered a verdict in his favor stating separately his damages for the first cause of action (alleged injuries resulting from fall in 1904) and the second cause of action (alleged injuries resulting from fall in 1905). An appeal was taken from the judgment entered thereupon to the Appellate Division, where the judgment so far as it was based upon the second cause of action was reversed and a new trial granted, and the judgment so far as it was based on the first cause of action was affirmed by a divided court. An appeal is taken to this court from said judgment so far as it affirmed the judgment of the Trial Term.

The plaintiff's part in such performance required him while in the dress of a fireman to drive the horses attached to a fire engine to a burning building, and then to go by a rear passageway to the fifth floor of such building and appear at a window, after which to throw a rope which was fastened and coiled by the window to the ground below, and after making two turns with the rope around a hook in his belt, descend on the rope until he reached a window on the fourth floor where a woman would appear, and then for the purpose of accomplishing her rescue take her across his shoulder and with such burden continue his descent on the rope to the ground.    This he had done daily from ten to twenty-two times each day for about twenty days until, on June 15, while on the rope with the woman a few feet below the fourth floor, the rope broke and they fell to the ground.

On that day the plaintiff had descended the rope as stated five or six times during the afternoon.    The accident occurred during the first performance in the evening. The complaint alleges: "That said fall and the injuries resulting therefrom to the plaintiff were due solely to the negligence of the defendant in the care, control, maintenance and supervision of said fire show or entertainment and in not providing plaintiff with safe and proper means to perform said rescuing act and in not providing safe and necessary apparatus, means and appliances for plaintiff's safety while performing said rescuing act."

There is a singular lack of evidence in the record from which to ascertain who are the officers and agents of the defendant corporation.    It does not appear whether the defendant was solely engaged in producing "Fighting the Flames," or whether such show was one of many maintained by it.    It does appear that a person named McCarthy had charge of the fire show, but that another person named Murphy had charge in part and that one De Jaegers paid the performers.    It does not appear what relation these three persons or either of them bore to the

defendant as a corporation.   They were apparently members of the troupe giving the show, as distinguished from the officers of the corporation.   It is more apparent, or at least probable, that they were immediately connected with those engaged in giving the performance instead of with the corporation, because it appears that at some time after the accident the plaintiff, who confessedly had nothing whatever to do with the corporation, became chief of the fire show.   The plaintiff testified that in 1904, after he had been employed for some time as a driver of the horses attached to the fire engine, he had a conversation with McCarthy and De Jaegers and was asked to do the part subsequently done by him in the rescuing act and was offered fifty cents for each performance.   He further testified: "I was to get the best Manilla hemp rope to be furnished by the firm in Murray street as used to furnish the rope for the firemen in New York."   He testified that McCarthy made that statement and that he also said that the rope used was a Manilla hemp rope. The plaintiff testified that the rope first used by him was a hemp rope and that he knew a good rope when he saw it.   The rope first used by him was continued in use for five or six days and then another kind of rope not as strong as Manilla hemp rope was used.   A large quantity of the new rope was purchased.   It was in charge of the storeroom keeper who testified: "I know the method employed to test that rope before these acts were performed.   The minute the rope was put there I generally cut it up in pices of the necessary length and put everybody on that could get hold of it — all the idle men around there, to stretch this rope   *   *   *   and put it away till it was required."   He further testified: "When new it will stand a strain of one thousand pounds or more without any trouble and leave a margin of safety."   The plaintiff also testified that the rope "running over this hook would wear it, burn it, dry-burn," and that he was getting a new rope every four or five days.   He testified

that he did not have time personally to test the rope but during the time he was engaged as a performer in the rescue act he saw the rope tested six times by several men putting their weight on the rope as it hung from the window.

The plaintiff could not have had more than about four or five different ropes during the twenty days in which he was engaged in the performance. He had been engaged as a fireman and as a performer in fire shows for years and knew a Manilla hemp hope when he saw it. He continued giving the performance for one hundred and fifty to three hundred and thirty times with ropes that he must have known were not Manilla hemp ropes and thereby acquiesced in the use of such ropes. Even if Manilla hemp rope had at all times been used, it, like other rope, would soon become unsafe. The continued safety of the plaintiff depended more upon care and judgment in determining when the rope used had been so worn or dry-burned as to make it unsafe, than upon the kind or quality of rope used. So far as appears from the record, except in the one instance when the accident occurred, the rope in use at that time lasted as well as Manilla hemp rope. The plaintiff's safety in descending the rope, so far as it depended upon the rope itself, rested in the vigilance of the plaintiff's co-employees and fellow-servants. He testified that there were thirty-four men working there and that any of them might change the ropes. This action is not brought under the Employers' Liability Act but rests wholly upon the common law. We repeat that it does not appear that McCarthy or either of the other persons mentioned in the record was an officer or unqualified representative of the defendant.

The principle upon which actions are allowed against a master by his servant is the obligation resting upon the former to provide adequate and safe appliances, and such as are usual in the particular business in which the servant is employed. That is a duty implied from their contract, and the failure of the master in that duty leaves

him responsible to the servant for injuries accruing. But if the master has performed his duty in that respect the servant takes all the risks involved in the work in which he is engaged, and of his own and his fellow-servant's negligence. (*Hudson* v. *Ocean Steamship Co.*, 110 N. Y. 625.)

This court, in the opinion in *Vogel* v. *American Bridge Company* (180 N. Y. 373), referring to the facts in that case, say: "The foreman, or 'boss of the job,' as he is called, was one McMahon, a competent man, and the workmen were under his directions. His authority comprehended the management of the work and the employment, or discharge, of the workmen on the job. At the time the accident occurred, the men were engaged in raising one of the trusses to an upright position; in order thereafter to raise it into its place in the roof. This was effected by a rope attached to the peak of the truss, which ran to the block and tackle of a pole, or derrick. A rope, which lay upon the ground, being examined by some of the men, was rejected by them, as not being strong enough. They proceeded to the toolhouse to get another rope and, having been asked by the foreman their purpose, were told by him to go back and use the one they had; saying: 'It is strong enough.' They did so and made the rope fast. Before the truss was raised into position, the rope broke and the truss fell upon the plaintiff and broke his leg." (p. 375.) The court in that opinion further say: "Under the rule, as settled in this court in a number of cases, more or less similar to this in the cardinal facts, the servant, in the work upon which the master employs him, assumes as part of the ordinary risks attendant upon, or implied from the nature of, the work, such as arise from the possible negligence of competent fellow-servants. (*Quigley* v. *Levering*, 167 N. Y. 58.)" (p. 376.) (*McConnell* v. *Morse I. W. & D. D. Co.*, 187 N. Y. 341, 346.)

In this case the rope, regardless of quality, would sooner or later, become unsafe for plaintiff's use. The amount of wear or dry-burning of the rope depended

upon the condition of the atmosphere and the way the rope was wound about the hook and used by the plaintiff in descending thereon. No one knew this better than the plaintiff. There was in the storeroom at all times a quantity of new rope cut in the right lengths for use. It was the duty of those engaged in the show as the plaintiff's fellow-servants and co-employees to maintain such an inspection of the rope in use from time to time as to prevent its use after it had become unsafe. The negligence, if any, was in their failure to perform that duty.

It does not appear that the defendant failed to provide the plaintiff with reasonably safe and proper means to perform his rescuing act, or with reasonably competent fellow-employees and performers.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT and HISCOCK, JJ., concur; COLLIN, J., dissents.

Judgment reversed, etc.