THOMAS YOURISON, d. b. a., *vs.* THE STATE OF DELAWARE, p. b. r. ALCAID DAWSON, d. b. a., *vs.* THE STATE OF DELAWARE, p. b. r.

*(February* 28, 1927.)

PENNEWILL, C. J., RICHARDS and RODNEY, J. J., sitting.

*James M. Satterfield* and *Melvin Hopkins* for appellants.
*Clarence A. Southerland*, Attorney-General, for the State.

Superior Court for Kent County, October Term, 1926. Nos. 2 and 3, October Term, 1926.

RICHARDS, J., delivering the opinion of the Court:

The argument on behalf of the appellants is based upon two grounds, namely: That the bill originated in the Senate and that it was a bill for raising revenue; both grounds were dealt with in a forceful manner and replied to with equal force for the appellee.

Each referred to the proceedings in the Senate and House of Representatives to show where the bill as finally passed by the Legislature originated, but this question need not be considered if it should appear to the satisfaction of the court that the bill which was enacted into law was not a bill for raising revenue.

The provision of the Constitution upon which the contentions of the appellants are made is *section 2 of article 8*, which reads as follows:

"All bills for raising revenue shall originate in the House of Representatives; but the Senate may propose alterations as on other bills; and no bill from the operation of which, when passed into a law, revenue may incidentally arise shall be accounted a bill for raising revenue; nor shall any matter or cause whatever not immediately relating to and necessary for raising revenue be in any manner blended with or annexed to a bill for raising revenue."

What constitutes revenue has been repeatedly defined by the writers of dictionaries and text-books and also by the courts in deciding cases dealing with this question. It is thus defined in the latest edition of Webster's New International Dictionary:

"The annual or periodical yield of taxes, excise, customs, duties, rents, etc., which a nation, state, or municipality collects and receives into the treasury for public use; public income of whatever kind."

Professor Cooley in his work on Taxation, *vol.* 2, § 498, expresses his views on the subject very clearly when he says:

"Revenue bills are those which have for their object the levying of taxes in the strict sense of the term. They are those which take money from the people without giving a direct equivalent in return therefor."

If this is the correct meaning of revenue it is not something which the people may pay at their option but which they are compelled to pay and for which they receive nothing in return, other than the rights of government which are enjoyed by all citizens alike. This view is supported by such cases as: *U. S. v. James*, 13 *Blatchf.* 207, *Fed. Cas. No.* 15464; *Stuard v. Thompson (Tex. Civ. App.)*, 251 *S. W.* 277; *Northern Counties Investment Trust v. Sears*, 30 *Or.* 388, 41 *P.* 931, 35 *L. R. A.* 188; *Welch v. Hotchkiss*, 39 *Conn.* 140, 12 *Am. Rep.* 383; *United States v. Mayo*, 26 *Fed. Cas.* 1231, *No.* 15755; *Vansant v. Harlem Stage*, 59 *Md.* 330; *United States v. Norton*, 91 *U. S.* 566, 23 *L. Ed.* 454.

The appellants call attention to the fact that we must look to the act itself in order to ascertain whether it was enacted for revenue purposes, or as a part of the police powers.

*Section* 2 of the act, being *chapter* 184 *of volume* 34 *of the Laws of Delaware*, provides as follows:

"It shall be unlawful for any person, firm or corporation to engage in the business of carrying fishing parties, for hire, in any boat or boats from the shores of this state for the purpose of fishing in the waters of the Delaware River and Bay, without first obtaining an annual license for each boat from the Board of Game and Fish Commissioners of the State of Delaware."

*Paragraph* 5 of said section further provides:

"All funds arising from the sale of the aforesaid licenses and from fines imposed for any violations of the provisions of this act shall be paid by the said Board to the Treasurer of the State of Delaware, in accordance with the provisions of 2360A, *section* 3A, *of chapter* 74, *of the Revised Code of the State of Delaware.*"

2360A, *section* 3A, *of chapter* 74, of the *Revised Code*, is a portion of the act creating the Board of Game and Fish Commissioners, and thus provides for what purposes such funds shall be used:

"Said Board shall have an official seal to authenticate all licenses, papers and documents issued by it in its official capacity, shall have the management

of all matters pertaining to game and fish protection, shall receive all funds arising from the sale of hunting and fishing licenses and from fines and forfeitures imposed for violations of the game and fish laws of this state, and shall have full control thereof and full discretion in the expenditure of the same in the purchase of supplies, printing and publishing game and fish laws, employment of wardens, salaries of officers, restocking the state with game and fish, protecting and preserving the same, the enforcement of the game and fish laws of this state, and, in the name of the state, in leasing or purchasing land for game propagation."

After reading the act in question together with the provisions of 2360A, *section 3A, of the Revised Code,* which we think it is necessary to do in order to gather its full meaning, can said act be classed as a revenue act? Can it be successfully maintained that the act imposed taxes for the general use of the government, or that it exacts money from persons for which they receive nothing in return? Under the provisions of the Code section above referred to, the Board of Game and Fish Commissioners is given discretionary power to expend the amount collected by licensing fishing boats, in purchasing supplies, printing and publishing game and fish laws, for the employment of game wardens, salaries of officers, restocking the state with game and fish, protecting and preserving the same and in leasing or purchasing lands for game propagation.

This shows clearly that it is not to be used to defray the general expenses of the government, but only for the purposes above specified. No citizen of the state is required to license a boat for carrying out fishing parties, but upon the payment of the amount named in the act he becomes entitled to a license authorizing him to carry out fishing parties for hire in a boat. In other words, he may decide for himself whether he desires to engage in the business of carrying out fishing parties, for hire, in a boat; deciding in the affirmative he must make application to the Board of Game and Fish Commissioners in order to obtain a license for each boat which he desires to so use and upon the payment of the prescribed fee, receives in consideration therefor, a license authorizing him to use his boat or boats in said business. While there are no express words in the act authorizing the Board of Game and Fish Commissioners to exercise any control over the business of carrying fishing parties, for hire, in boats, yet can it be doubted that under the

general powers granted said board by the act creating it, it has certain regulatory powers by reason of which it would have the right to refuse to license a boat which it considered unsafe, or which was owned by a person whom it considered unfitted to have charge of its operation? The safety and welfare of the public certainly demands that there shall be some supervision over this business. We are convinced that the amount collected is a sum intended to be used to pay the necessary expenses attending the issuing of the license, and supervisory duties which must necessarily be performed by the Board of Game and Fish Commissioners. There is no express grant of the power of taxation for revenue in the act, nor can any such power be drawn from it by necessary implication. We, therefore, think it was the intention of the Legislature to give to the Board of Game and Fish Commissioners the power to license and regulate the use of boats for carrying fishing parties, for hire, under its general police powers, as a means of regulating the business carried on, and not with a view to raise revenue.

In *State v. Bernheim*, 19 *Mont.* 512, 49 *P.* 441, where the court was called upon to construe an act providing for licensing railroad ticket agents, it held the authority to so license was a police measure, and not a bill for raising revenue. The real distinction between a bill for raising revenue, and a bill providing for the licensing of a particular business, is the distinction between a general tax imposed on all citizens, or on all property of a designated class, on the one hand, and a license fee or tax which the citizen may pay or not at his pleasure, depending upon whether he desires the privilege covered by the license. In a law, strictly for raising revenue, the citizen embraced within the law must pay the tax imposed whether he is willing to do so or not. He has no option. It is otherwise under a law requiring the payment of a license fee for engaging in a particular business for he is not compelled to engage in the business.

In *Pittsburgh, C. & St. L Ry. Co. v. State*, 49 *Ohio St.* 189, 30 *N. E.* 435, 16 *L. R. A.* 380, cited by appellants, the revenue derived from the act was to be placed in the public treasury to be used for all public purposes. In *Ellis v. Frazier*, 38 *Or.* 462, 63 *P.* 642, 53

o

*L. R. A.* 454, where a levy of $1.25 was made on bicycles, the money to be applied for the construction of bicycle paths, and in the case of *City of St. Paul v. Traeger*, 25 *Minn.* 248, 33 *Am. Rep.* 462, where a license of $25 imposed on a peddler of vegetables in the streets of the city was held to be a tax on business for revenue, both of which were referred to and quoted from by appellants, it does not appear from the particular statutes there under consideration that the funds raised were to be placed under the full control of a commission, such as our Board of Game and Fish Commissioners, which was given full discretion in the expenditure thereof for the sole purposes of said commission, as is the case with the statute we are called upon to construe.

We cannot agree with the argument advanced by the appellants, that because a certain fee or tax is required to be paid for each boat used by the licensee, the tax is a property tax. We have heretofore set forth that we cannot argree that it was the intention of the Legislature that the money collected should be used for general public purposes which is generally held to be one of the requisites of a property tax.

We agree with the decision of the court in *Dawson v. Kentucky Distilleries*, 255 *U. S.* 288, 41 *S. Ct.* 272, 65 *L. Ed.* 638, to the effect that a tax of fifty cents per gallon on liquor withdrawn from bond is essentially a tax on property and not on an occupation, but do not consider it a parallel case with the one before us.

In none of the cases cited by the appellants was the exact question presented here involved. The question before the court is whether the statute imposing the fee or tax is a revenue measure within the meaning of the constitutional provision. We are of the opinion that it is not.

Having decided that the statute is not a revenue measure it is not necessary for us to decide in which branch of the Legislature it originated.

The motion to quash the information is dismissed.