BENNETT *v.* SPENCER COUNTY BRIDGE COMMISSION ET AL.

[No. 27,033. Filed March 11, 1938.]

*Paul F. Mason,* and *Ralph E. Roberts,* for appellant.

*L. N. Savage,* for appellee.

FANSLER, J.—The appellant brought this action on behalf of himself and all other taxpayers of Spencer County, seeking to enjoin the performance of a contract for the issuance and sale of bonds to secure money with which to construct a bridge over the Ohio River, connecting Spencer County with the State of Kentucky, and seeking to enjoin the board of county commissioners of Spencer County from paying any money to the Spencer County bridge commission, to reimburse the commission for expenses incurred in the operation and maintenance of a bridge built, in the event the tolls collected from traffic should not be sufficient to pay operation and maintenance expenses after the payment of sinking fund requirements for the retirement of bonds proposed to be issued.

A demurrer to the complaint was sustained, which ruling is the basis of the only error assigned.

The complaint alleges that the defendants who are appellees, other than Bitting, Jones and Company, Incorporated, were proceeding under chapter 114 of the Acts

of 1929, as amended by chapter 141 of the Acts of 1937 (Acts 1937, p. 796), and had entered into an agreement with the defendant, appellee Bitting, Jones and Company, Incorporated, for the issuing of bonds in the manner provided for by the statute, for the purpose of providing funds with which to pay for the construction of a bridge over the Ohio River; that, by the terms of the contract, it was agreed that the bonds should contain a provision that, until the bonds were paid, the bridge commission of Spencer County should operate and maintain the bridge from the funds received from the traffic on the bridge, as a part of the highway system of the county; that, in the event the tolls in any year should be insufficient to provide for the sinking fund requirements, together with the cost of operating and maintaining the bridge, the bridge commissioners should be reimbursed, from the funds of the county available for use in the construction, maintenance, and operation of public highways, for any expenditure made for the operation and maintenance of the bridge, for which funds are not available from tolls from traffic. This provision of the contract follows the statute on the subject. The act in question is entitled: "An Act to enable counties to construct, operate and maintain bridges across rivers and streams so as to connect such counties with an adjoining state; providing for a commission in such county to construct, operate, control and maintain such bridges and fixing the power and duties of such commission and providing for the issuance of bridge revenue bonds of such county to pay the costs thereof, payable solely through bridge tolls without incurring of indebtedness of such county." (Acts 1929, p. 332.) The act applies to any county which borders on any river which forms a boundary line between this state and an adjoining state. It provides for the initiation of the proceedings for the construction of a bridge by the county commissioners; the appointment of

five persons to constitute a bridge commission; the commissioners to serve for four years; successors to be appointed by the county commissioners; the commissioners to serve without pay; that "the persons appointed as provided herein shall constitute a body corporate," with power to contract and be contracted with, to sue and be sued, and with power to make all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers. The commission is empowered to prepare plans, select locations, and determine the type and manner of construction of the bridges contemplated by the act, and to build and equip, operate, manage, and control such bridges. It is provided that the counties may not incur indebtedness of any kind or nature for the purpose of constructing a bridge under the act, but it is provided that the counties may procure funds by the issuance of bonds, the principal and interest of which are to be payable solely from the revenue derived from tolls exacted for the use of the bridge. It is provided that the receipts from the tolls, after provision for current retirements and interest on bonds, shall be used in payment of the expense of maintaining, repairing, and operating the bridge; but that, in the event there are insufficient funds for maintenance and operation expenses, after payment of bond requirements, the bridge commission shall be reimbursed from the funds of the county "available for use in the construction, maintenance and operation of public highways," for any expenditures made for the operation and maintenance of the bridge, for the payment of which funds are not available from tolls from traffic. It is provided that, when all of the bonds have been retired and paid, the bridge shall become the property of the State of Indiana and a part of the Indiana State Highway System, to be maintained by the State.

It is contended by appellant that the act is uncon-

stitutional, and in conflict with section 23 of article 4, section 19 of article 4, and section 1 of article 13, of the Constitution of Indiana.

Section 23 of article 4 provides: "In all the cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State." The law in question applies in the same way to all counties in all parts of the State, where the conditions on which it operates are similar; and therefore, under well-settled principles, it is a general, and not a local or special, law. *Wayne Township* v. *Brown* (1933), 205 Ind. 437, 186 N. E. 841; *Kelly* v. *Finney et al.* (1935), 207 Ind. 557, 194 N. E. 157; *Heckler* v. *Conter et al.* (1934), 206 Ind. 376, 187 N. E. 878; *Millers National Insurance Co.* v. *American State Bank* (1934), 206 Ind. 511, 190 N. E. 433; *Meara, Trustee, et al.* v. *Brindley et al.* (1935), 207 Ind. 657, 194 N. E. 351.

Section 19 of article 4 provides: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Appellant contends that the provision in the statute for reimbursement of the county bridge commission from the funds of the county available for use in the construction, operation, and maintenance of public highways, for sums expended in the operation and maintenance of the bridge, under certain circumstances, is not within the title of the act. But the title of the act provides that it is "to enable counties to construct, operate and maintain bridges." Under this title there might have been an unconditional provision for maintenance and operation out of highway funds, or there could have been a provision by which the county

would maintain and operate the bridges at county expense in the first instance, with a provision for reimbursement of the county funds, if the fund from the tolls was sufficient. The provision complained of merely sets up an accounting method by which the payment of maintenance and operation costs, ultimately chargeable against the county highway fund, is deferred until the amount so chargeable, if any, is definitely determinable. Such provisions are but incidental to the accomplishment of the purpose of the act, and are clearly within the scope of the act as indicated by the title.

It is also contended that, by section 1 of the amendment of 1937 (Acts 1937, ch. 141, p. 796), authority is provided "to construct and/or acquire by purchase or otherwise a highway bridge over and across such river," and that the title of the act is not broad enough to cover the acquisition of bridges by purchase or otherwise than by constructing them. But, even if the appellant's contention could be sustained, it does not help him, since the act would only be void as to the provision for purchase or otherwise acquiring a bridge. It would be perfectly valid in its provision for the construction of a bridge, and the thing which he seeks to enjoin is a proceeding for the construction of a bridge, as appears from his complaint.

Section 1 of the article 13 of the Constitution provides: "No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum on the value of the taxable property within such corporation." Appellant contends that the bonds proposed to be issued will create an indebtedness against the county of Spencer in excess of its constitutional limitation. But the act, both in its title and in the body, provides that the bonds shall not be an indebtedness of the county. Even the maintenance expense

provided for is limited to money available from a specific highway maintenance fund. It is not required that normal local governmental functions shall cease because a municipality or governmental unit is indebted up to its constitutional limit. Notwithstanding such indebtedness, current revenues may be used, and the Legislature may direct their use, for such purpose, including the maintenance and operation of highways. It is well settled that such obligations do not create an indebtedness within the constitutional limitation. *Letz Manufacturing Co. et al* v. *Public Service Commission of Indiana* (1936), 210 Ind. 467, 4 N. E. (2d) 194; *Underwood et al* v. *Fairbanks, Morse & Co. et al.* (1933), 205 Ind. 316, 185 N. E. 118.

Section 6 of article 10 of the Constitution provides: "No county shall subscribe for stock in any incorporated company, unless the same be paid for at the time of such subscription; nor shall any county loan its credit to any incorporated company, nor borrow money for the purpose of taking stock in any such company; nor shall the General Assembly ever, on behalf of the State, assume the debts of any county, city, town, or township; nor of any corporation whatever." Appellant contends that it is important to determine whether the "body corporate," created by the act, is a private corporation or a public corporation; that "if the revenues of the bridge were insufficient to pay the maintenance and operating expenses and also meet the sinking fund requirements, as provided in the act, then most certainly under such act the general fund of Spencer County would be pledged and obligated to make up the deficit, possibly, to the total extinction of such fund if there is no way of ascertaining what revenues the tolls from the bridge would produce." But there is no provision in the act that the county shall subscribe to stock in a corporation, nor that it shall loan its credit, or borrow money for the purpose of taking stock, nor is there any

assumption of debts of any county, or township, or of
any corporation whatsoever. In no event are county
revenues to be used for paying the bond indebtedness or
the interest. In certain contingencies the bridge, used as
a part of the county highway system, is to be maintained
out of highway maintenance funds. But there are many
provisions in the statutes for the construction of high-
ways at the expense of adjoining property, and not at
public expense, where bonds are issued against adjoin-
ing property, and where the legislature has provided
that the county shall maintain the highways, after they
are constructed, out of highway maintenance funds. It
has never been suggested that such provisions are un-
constitutional, and no basis is seen for condemning such
provisions as in conflict with the constitutional pro-
visions referred to.

Judgment affirmed.