ENNIS *v.* STATE HIGHWAY COMMISSION OF INDIANA ET AL

[No. 28,914. Filed November 17, 1952.]

312

*Nelson Grills,* of Indianapolis, for appellant.

*J. Emmett McManamon,* Attorney General; *Fred R. Bechdolt, Norman J. Beatty,* Deputy Attorneys General, and *Clyde H. Jones,* Chief Counsel, for appellees.

JASPER, C. J.—This is an action by appellant seeking a declaratory judgment that Chapter 281 of the Acts of 1951 (Acts 1951, p. 848; §§36-3202, 36-3222, Burns' 1949 Replacement [1951 Supp.]) be declared unconstitutional, and that appellees be enjoined from carrying out the provisions of the act.

To appellant's complaint in one paragraph, appellees filed an answer under our Rule 1-3. It was found and adjudged that Chapter 281 of the Acts of 1951 is valid, and not in violation of the Constitution of the United States or the Constitution of Indiana.

Appellant assigns as error the overruling of his motion for new trial. The motion for new trial asserts only that "The decision of the Court is contrary to law."

Appellant says that the title to Chapter 281 of the Acts of 1951 is not broad enough to cover that part of subsection (c) of section 4 of the act, which provides:

"Any obligation or expense hereafter incurred by the state highway commission with the approval of the commission, for surveys, borings, prepara-

tion of plans and specifications, and other engineering services in connection with the construction of a project shall be regarded as a part of the cost of such project and shall be reimbursed to the state out of the proceeds of toll road revenue bonds hereinafter authorized."

And also section 20 of the act, which provides:

"With the approval and the consent of the controlling board, the chairman of the state highway commission shall expend out of any funds available for the purpose such moneys as may be necessary for the study of any toll road project or projects and to use its engineering and other forces, including consulting engineers and traffic engineers, for the purpose of effecting such study, and all such expenses incurred by the chairman of the state highway commission prior to the issuance of toll road revenue bonds under the provisions of this act, shall be paid by the chairman and charged to the appropriate toll road project or projects, and the chairman shall keep proper records and accounts showing each amount so charged. Upon the sale of toll road revenue bonds for any project or projects, the funds so expended by the chairman with the approval of the commission in connection with such project or projects shall be reimbursed to the highway commission from the proceeds of such bonds."

The title to Chapter 281 is as follows:

"AN ACT to facilitate vehicular traffic in the State of Indiana by providing for the construction, maintenance, repair and operation of projects and toll road projects; creating the Indiana toll road commission and defining its powers and duties; providing for financing the construction of such projects by the issuance of toll road revenue bonds of the state, payable solely from tolls and other revenues; and providing for the collection of tolls and other revenues to pay the cost of maintenance, repair and operation of such projects and to pay such bonds and the interest thereon, and declaring an emergency."

Appellant argues that the two last-cited sections of the statute are in violation of Section 19, Article 4, of the Constitution of Indiana, which provides:

"Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

In considering the constitutionality of an act in reference to its title, a very liberal interpretation will be adopted rather than a critical construction calculated to defeat it. As was stated in *State* v. *Young* (1874), 47 Ind. 150, 152, 153:

"It may here be observed that wherever there is doubt on this subject, the doubt should be thrown in favor of the action of the co-ordinate department of the government, and the law should be sustained. But, on the other hand, when it plainly appears to the judicial mind that the matter of an enactment is neither embraced in, nor properly connected with, the subject expressed in the title, it becomes an imperative judicial duty to hold the enactment void."

It is not necessary to express in the title matters which are germane and properly connected with the subject-matter of the act. *W. A. Barber Grocery Co.* v. *Fleming* (1951), 229 Ind. 140, 96 N. E. 2d 108; *State ex rel. Taylor* v. *Greene Circuit Court* (1945), 223 Ind. 562, 63 N. E. 2d 287. This court, in the case of *Bolivar Twp. Bd. of Fin. of Benton Co.* v. *Hawkins* (1934), 207 Ind. 171, 178, 191 N. E. 158, 161, said:

"As is said in the case of *Board* v. *Scanlan* (1912), 178 Ind. 142, 145, 95 N. E. 801, 'It is not necessary that all matters connected with, or ger-

mane to the subject of an act shall be embraced in the title. It is sufficient that the title shall "embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." (Const. Art. 4, §19), and that it is of such character as fairly to apprise the legislators and the public in general of the subject-matter of the legislation, so as to lead to inquiry into the body of the bill, or indicate some particular branch of legislation as a head under which the particular provisions of the act may reasonably be looked for, and it need not set out all the matters properly connected with, or germane to the subject-matter of the act.' "

In *State, ex rel.* v. *Commercial Ins. Co.* (1902), 158 Ind. 680, 684, 64 N. E. 466, 467, 468, this court said:

"While this court has been liberal in the past in construing §19, of article 4, of the Constitution. nevertheless, it has frequently held that when the title of an act is so special or limited as to include one particular only of some general subject over which legislation may be had, then, and under such circumstances, the body of the act must be limited or confined to the particular or special subject expressed in the title, and to matters properly connected therewith, and the act can not deal with other particulars of such general subject."

The sections of the statute here in question are not specifically expressed in the title to the act. Therefore we must decide whether they are germane and properly connected with the subject expressed.

Since the State Highway Commission of Indiana is charged by law with the duties generally of constructing, maintaining, and repairing state highways, it seems to us that the title to the act is sufficient to put the legislators and the public in general on notice that the commission might be involved in the enforcement of the act in such a manner as to become liable for costs

incurred. Subsection (c) of Section 4, Chapter 281, of the Acts of 1951, defines the word "cost" as applied to toll projects. Therefore any obligation or expense incurred by the State Highway Commission would be a part of the cost of the toll road and should be reimbursed to the State Highway Commission. Section 36-3220, Burns' 1949 Replacement (1951 Supp.). That portion of subsection (c) of Section 4, Chapter 281, of the Acts of 1951, does not violate Section 19, Article 4, of our Constitution.

Section 20, Chapter 281, of Acts of 1951, provides for the reimbursement to the State Highway Commission of all funds expended "for the study of any toll road project or projects and to use its engineering and other forces, including consulting engineers and traffic engineers, for the purpose of effecting such study, and all such expenses incurred by the chairman of the state highway commission prior to the issuance of toll road revenue bonds . . . shall be paid by the chairman and charged to the appropriate toll road project or projects. . . ." The State Highway Commission of Indiana is continually expending money for the study of its highways, and using the necessary personnel to carry on this work. It is an incident to, germane to, and properly a part of the construction of highways in this state.

As this court has said, the title to an act need not contain an index to the act.

The title to the act here in question is not so restrictive as to prevent the expenditure of funds by the State Highway Commission of Indiana for the study of any toll road project or projects and for the use of its personnel. Such study and use of personnel is a proper cost of the toll road and properly connected with the construction.

In the case of *Bennett* v. *Spencer County Bridge Comm.* (1938), 213 Ind. 520, 13 N. E. 2d 547, a complaint was filed to enjoin the performance of a contract for the issuance of bonds to secure money with which to construct a toll bridge over the Ohio River, and to enjoin the board of county commissioners of Spencer County from paying any money to the bridge commission for expenses incurred in the operation and maintenance of a bridge built, in the event the tolls collected from traffic were not sufficient to pay the expenses. Among other questions raised, the title was challenged. The title, in substance, was similar to the title here questioned, except it authorized the county to build toll bridges through a bridge commission and issue bonds. That part of the statute which was criticized as not coming within the title provided:

". . . In the event that such tolls shall, in any year while said bridge is so operated by the bridge commission, be insufficient to provide for the sinking fund requirements for the payment of the interest and principal of the bonds issued under this act, together with the cost of operating and maintaining said bridge during such year, the bridge commission shall be reimbursed from the funds of the county available for use in the construction, maintenance and operation of public highways, without further appropriation than the authority of this act, for any expenditures made for the operation and maintenance of such bridge, for the payment of which funds are not available from tolls from traffic using such bridge after the payment of sinking fund requirements, for the payment of the interest and principal of the bonds issued under the provisions of this act."

Acts 1937, Chapter 141, Section 6, Page 801.

This court, speaking through Judge Fansler, said (pp. 524, 525 of 213 Ind., pp. 549, 550 of 13 N. E. 2d):

"Section 19 of article 4 provides: ... Appellant contends that the provision in the statute for reimbursement of the county bridge commission from the funds of the county available for use in the construction, operation, and maintenance of public highways, for sums expended in the operation and maintenance of the bridge, under certain circumstances, is not within the title of the act. But the title of the act provides that it is 'to enable counies to construct, operate and maintain bridges.' Under this title there might have been an unconditional provision for maintenance and operation out of highway funds, or there could have been a provision by which the county would maintain and operate the bridges at county expense in the first instance, with a provision for reimbursement of the county funds, if the fund from the tolls was sufficient. The provision complained of merely sets up an accounting method by which the payment of maintenance and operation costs, ultimately chargeable against the county highway fund, is deferred until the amount so chargeable, if any, is definitely determinable. Such provisions are but incidental to the accomplishment of the purpose of the act, and are clearly within the scope of the act as indicated by the title."

We believe that the reasoning in the above case is applicable to the case at bar.

Section 20, Chapter 281, of the Acts of 1951, is germane to and properly connected with the subject of the title, and does not violate Section 19, Article 4, of the Constitution of Indiana. Subsection (c) of Section 4, Chapter 281, of the Acts of 1951, is germane to and properly connected with the subject as expressed in the title of the act.

Appellant further contends that the act is invalid for the reason that it is a revenue-raising measure, and was introduced in the Senate in violation of Section 17, Article 4, of the Constitution of Indiana. This section provides:

"Bills may originate in either House, but may be amended or rejected in the other; except that bills for raising revenue shall originate in the House of Representatives."

With this contention we cannot agree. This court has held that the term "raising revenue" is confined to acts to levy taxes, in the strict sense of the word, and does not apply to other purposes which may incidentally create revenue.[1] *Stith Petroleum Co.* v. *Dept. of Audit and Control* (1937), 211 Ind. 400, 5 N. E. 2d 517; *Andrews* v. *City of Marion* (1943), 221 Ind. 422, 47 N. E. 2d 968; *Rosencranz* v. *City of Evansville* (1924), 194 Ind. 499, 143 N. E. 593.

Section 1, Chapter 281, of the Acts of 1951, provides:

"In order to remove the present handicaps and hazards on the congested highways in the State of Indiana, to facilitate vehicular traffic throughout the state, to promote the agricultural and industrial development of the state, and to provide for the general welfare by the construction of modern express highways embodying safety devices including center division, ample shoulder widths, long-sight distances, multiple lanes in each direction and grade separations at intersections with other highways and railroads, the Indiana toll road commission (hereinafter created) is hereby authorized and empowered to construct, maintain, repair and operate toll road projects (as hereinafter defined) at such locations as shall be approved by the governor, and in accordance with such alignment and design standards as shall be approved by the highway commission and to issue toll road revenue bonds of the state payable solely from revenues, to pay the cost of such projects."

The purposes enumerated in the last-cited section tend to further the public welfare, alleviate congestion

---

[1] See 4 A. L. R. 2d 973, Ann.

on highways, and promote agricultural and industrial development, among others. Nowhere in the act is there any provision for the assessment of taxes. The payment of a tax is compulsory and not optional, and it entitles the taxpayer to receive nothing in return, other than the rights of government which are enjoyed by all citizens alike. *Yourison* v. *State* (1927), 33 Del. 577, 140 A. 691; *Northern Counties Trust* v. *Sears* (1895), 30 Or. 388, 41 P. 931, 35 L. R. A. 188.

Under this statute, the tolls to be charged are to be paid only by those using the toll roads. A person can use the toll roads or not at his option. If he does not use them, he need not pay toll. A person using the toll roads receives in return the privilege of using roads not bisected by crossings, and roads that are of the most modern design and embodying the latest safety devices.

Taxes are levied for the support of government, and their amount is regulated by its necessities. Tolls are the compensation for the use of another's property or improvements made, and their amount is determined by the cost of the property or improvements. *The People* v. *Schommer* (1945), 392 Ill. 17, 63 N. E. 2d 744.

Chapter 281 of the Acts of 1951 is not a revenue-raising measure as contemplated by Section 17, Article 4, of the Constitution of Indiana.

Appellant next contends that the act creates a corporation by special act in violation of Section 13, Article 11, of the Constitution of Indiana. This section provides:

"Corporations, other than banking, shall not be created by special Act, but may be formed under general laws."

Appellant argues that a portion of Section 3, Chapter 281, of the Acts of 1951, contravenes the last-cited section of the Constitution of Indiana.

Section 3 provides in part:

". . . The commission hereby created is a body both corporate and politic in the State of Indiana . . ."

However, Section 3 further provides:

"and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of toll road projects shall be deemed and held to be essential governmental functions of the state . . ."

The last-cited provision makes it clear that the commission is created for a public purpose. From a reading of the act in its entirety, it is apparent that it provides for the construction, operation, and maintenance of toll roads anywhere in the State of Indiana. The law applies to the entire state. It is neither local nor special. It is a general law under Sections 22 and 23, Article 4, of our Constitution. *Bennett* v. *Spencer County Bridge Comm.* (1938), 213 Ind. 520, 13 N. E. 2d 547, *supra.*

The toll road commission here created is a commission of the state created for a public purpose. *Application of Oklahoma Turnpike Authority* (1950), 203 Okla. 335, 221 P. 2d 795. It could not embark on an enterprise of a private character. *State, ex rel.* v. *Ferguson* (1951), 155 Ohio St. 26, 97 N. E. 2d 660. Despite the fact that the commission is given the characteristics of a corporation, it is still a commission of

the State of Indiana.[2] Section 36-3205, Burns' 1949 Replacement (1951 Supp.).

The commission is not a corporation within the meaning of Section 13, Article 11, of the Constitution of Indiana.

The constitutional debates on the Constitution as adopted in 1851 show the intent to restrict Section 13, Article 11, to private corporations only. This court has extended this section to cover municipal corporations. *Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 73 N. E. 78; *Sarlls, City Clerk* v. *State, ex rel.* (1929), 201 Ind. 88, 166 N. E. 270. We will not further extend the section to cover boards or commissions of the state. See Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana, Vol. 2, pp. 1286, 1857, 1875, 2074, 2075, for debates on corporations.

Appellant further contends that the Legislature has improperly delegated authority to the Indiana Toll Road Commission without setting sufficient standards to guide it in exercising its authority, and therefore the act violates Section 1, Article 4, of the Constitution of Indiana, which provides:

> "The Legislative authority of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives. The style of every law shall be: 'Be it enacted by the General Assembly of the State of Indiana'; and no law shall be enacted, except by bill."

[2] Section 36-3203, Burns' 1949 Replacement (1951 Supp.), provides:

". . . the construction, operation and maintenance of toll road projects shall be deemed and held to be essential governmental functions of the state, but the commission shall not however be immune from liability by reason thereof."

Reasonable standards must be imposed where the Legislature delegates discretionary duties to administrative officers and bodies. *Kryder* v. *State* (1938), 214 Ind. 419, 15 N. E. 2d 386.

Appellant argues that no standard is provided for the selection of turnpike sites. Section one of the act (§36-3201, Burns' 1949 Replacement [1951 Supp.]) provides that the commission is authorized and empowered to construct, maintain, repair, and operate toll road projects "at such locations as shall be approved by the governor, and in accordance with such alignment and design standards as shall be approved by the highway commission." Section 4 (c) of the act (§36-3204, Burns' 1949 Replacement [1951 Supp.]) provides for ". . . other expenses necessary or incident to *determining the feasibility or practicability of constructing any such project.* . . ." (Our emphasis.)

Section 10 of the act provides for the issuing of bonds on each project, and for the retirement of the bonds from the revenues of each project. Therefore the locations must be selected with this standard in mind.

The toll road commission is given broad powers to locate toll roads, but this is not in violation of the Constitution. 16 C. J. S., Constitutional Law, §138 (8), p. 368. The powers here delegated are no broader than the powers granted to the State Highway Commission in selecting and constructing highways in this state. Section 36-307, Burns' 1949 Replacement.

After considering the sections of the statute heretofore cited, and the specific nature of the purposes to be accomplished by this act, and the fact that locations of all projects must be approved by the Governor, it seems that the standards set are as specific, definite, and certain as the necessities of the case permit.

The foregoing provisions fix reasonable standards for the determination of the location of such projects.

Appellant contends that reasonable standards are not set for the fixing of toll charges. Section 5 (g) of the act (§36-3205, Burns' 1949 Replacement [1951 Supp.]) empowers the commission:

"To fix and revise from time to time and charge and collect tolls for transit over each toll road project constructed by it"

Section 14 of the act (§36-3214, Burns' 1949 Replacement [1951 Supp.]) provides:

"Such tolls shall be so fixed and adjusted in respect of the aggregate of tolls on each toll road project including any extension or section thereof in connection with which the bonds of any issue shall have been issued as to provide a fund sufficient with other revenue from such project or extensions of sections thereof, if any, to pay (a) the cost of maintaining, repairing and operating such project or extension or sections thereof and (b) the principal of and the interest on such bonds as the same shall become due and payable, and to create reserve for such purposes."

It seems to us that section 14 of the act so obviously sets reasonable standards for the fixing of toll charges that a discussion thereof would be idle.

Appellant further argues that no standard or limit is placed on the borrowing of monies. However, the act provides, under §36-3204, a definition of "cost," and, under §36-3205 (f), authorizes and empowers the commission:

"To issue toll road revenue bonds of the state of Indiana, payable solely from revenues, as herein provided, for the purpose of paying all or any part of the cost of any one or more toll road projects."

Section 36-3209 provides for terms of the bonds to be issued.

The act discloses that reasonable standards have been set, for the reason that the amount of the revenue bonds to be issued are limited by the costs as defined in the act.

It is also contended that no standard is provided for points of ingress and egress on the toll road projects. The act provides that points of ingress and egress shall be established, located, controlled, and limited as necessary and desirable, in the judgment of the commission and the chairman of the State Highway Commission, to insure the proper operation of the projects, and prohibit entrance at points not designated. Section 36-3205 (j), Burns' 1949 Replacement (1951 Supp.). These are reasonable standards.

Appellant further contends that no standard is set for the expenditure of funds by the State Highway Commission under sections 4 (c) and 20. The Legislature provided in the act that the chairman of the State Highway Commission would provide funds "as may be necessary," and this only with the approval and consent of the controlling board. The necessity for the expending of funds must be determined and be bona fide. This, coupled with the fact that the toll roads must be feasible and surveys made must show the toll roads to be self-financed, would set reasonable standards for the authority delegated under sections 4 (c) and 20.[3] In *Kryder* v. *State, supra,* reasonable standards were discussed, and this court said (pp. 425, 426 of 214 Ind., pp. 389, 390 of 15 N. E. 2d) :

---

[3] See *State ex rel.* v. *Defenbacher* (1950), 153 Ohio St. 268, 91 N. E. 2d 512, and *State, ex. rel.,* v. *Ferguson* (1951), 155 Ohio St. 26, 97 N. E. 2d 660, *supra.*

"The validity of legislation regulating public utilities rests, in many instances, upon the single limitation that rates and charges fixed by administrative boards and commissions shall be *reasonable.* Legislation of this character is sustained upon the theory that it is proper for the legislature to delegate to such boards and officers the function to determine what is or what is not reasonable under the particular facts. *Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.* (1908), 191 N. Y. 123, 83 N. E. 693, 18 L. R. A. (N. S.) 713; *Idaho Power & Light Co.* v. *Blomquist* (1914), 26 Idaho 222, 141 Pac. 1083; *Minneapolis, etc. R. Co.* v. *Railroad Commission* (1908), 136 Wis. 146, 116 N. W. 905, 17 L. R. A. (N. S.) 821. The restriction imposed by the act before us that the holders purchased by the commissioner for distribution to the public shall posses quality, appearance and usability, is none the less definite and specific.

"Under a general statute giving to a state board of health power to restrict and suppress contagious and infectious diseases, such department has authority to designate such diseases as are contagious and infectious, and the law is not void for this reason on the ground that it delegates legislative power. *People ex rel. Barmore* v. *Robertson* (1922), 302 Ill. 422, 134 N. E. 815, 22 A. L. R. 835; *Ex Parte McGee* (1919), 105 Kan. 574, 185 P. 14, 8 A. L. R. 831."

Appellant's next contention, that a tax exemption was granted in violation of Section 1, Article 10, of the Constitution of Indiana, is based upon his assertion that the act creates a private corporation. Since we have found this not to be a private corporation, this contention is without merit. Moreover, §64-201, Burns' 1951 Replacement, provides for exemption of "The property of this state." All property involved in the act here questioned is property of the state. *Application of Oklahoma Turnpike Authority* (1950), 203 Okla. 335, 221 P. 2d 795, *supra.* Section 1, Article 10, of the Constitution of Indiana, is not vio-

lated. *State, ex rel.* v. *Defenbacher* (1950), 153 Ohio St. 268, 91 N. E. 2d 512, *supra.*

Appellant contends that section 20 of the act here questioned fails to provide properly for the expenditure of state highway funds, in violation of Section 3, Article 10, of the Constitution of Indiana. This section provides:

"No money shall be drawn from the Treasury, but in pursuance of appropriations made by law."

Section 20 of the acts, heretofore set out, provides for the expenditure of funds and services of the State Highway Commission, and that the chairman of the commission "shall expend out of any funds available for the purpose such moneys as may be necessary for the study of any toll road project or projects and to use its engineering and other forces. . . ." The identical question was discussed in *Application of Oklahoma Turnpike Authority, supra,* where the court said (pp. 345, 346 of 203 Okla., p. 807 of 221 P. 2d):

"Of course, the Highway Commission has general authority over the state to incur such preliminary expense in reference to highway construction, and when they incur such expense, on any particular line or route, the expenditure is not rendered illegal if that route or line is thereafter taken over by the Turnpike Authority and a toll road constructed thereon. It is only sound business and fair that in such an instance the Turnpike Authority should make reimbursement. In a case of such preliminary work and expense by the Highway Commission, even though made in possible contemplation of toll road construction by the Authority, if the Authority should fail or decline the line or route for toll road, the line or route might well be utilized as and for a portion of the state system of free roads. Thus it seems clear that any such preliminary work and expense that is generally done, or might be done, by the Highway Commission, would

be in exact accord with its general duties and would be thoroughly covered by and included in the appropriation of money to the Highway Commission, or for general use by the Highway Commission within the scope of its duties as to the public highways of the state."

Chapter 217 of the Acts of 1951 (Acts 1951, p. 577) appropriates money for the construction of highways, among other things. The act before this court authorizes the State Highway Commission to expend funds. Funds have been appropriated for construction of highways, and Chapter 281 limits the funds to those necessary to be expended for the study of toll road projects. Chapter 281 places other duties on the State Highway Commission which would of necessity require a study by it of the projects, such as the requirements in Section 1 of Chapter 281.

Section 3, Article 10, of our State Constitution, is not violated, as funds of the State Highway Commission may be expended "out of any funds available for the purpose," and these were appropriated by Chapter 217 of the Acts of 1951. The amount of funds is limited by "moneys as may be necessary," and as appropriated to the State Highway Commission. *State ex rel.* v. *Defenbacher* (1950), 153 Ohio St. 268, 91 N. E. 2d 512, *supra.*

Appellant contends that the act violates Section 2, Article 10, of the Constitution of Indiana, in that there is an improper utilization of income from a public works. This section provides:

"All the revenues derived from the sale of any of the public works belonging to the State, and from the net annual income thereof, and any surplus that may, at any time, remain in the Treasury, derived from taxation for general State purposes, after the payment of the ordinary expenses of the government, and of the interest on bonds of the State, other than Bank bonds, shall be annually applied,

under the direction of the General Assembly, to the payment of the principal of the Public Debt."

Chapter 281 of the Acts of 1951 does not provide for the disposition of the *net income* from any toll road project. The act does provide for the paying of all expenses and costs of the project, including the bonds; and not until these have been paid do the roads become a part of the public works belonging to the state. Under the act they then become toll free. Section 36-3219, Burns' 1949 Replacement (1951 Supp.). Therefore, under the act, there could be no net income involved. Chapter 281 does not violate Section 2, Article 10, of the Constitution of Indiana.

Appellant further contends that state funds are being expended for a private purpose. The state is charged with the duty of providing and maintaining highways. *Harmon* v. *Gephart* (1910), 173 Ind. 391, 393, 90 N. E. 890, 891. In the last-cited case, this court said:

> "The legislature, by virtue of the inherent police power of the State, is clothed with authority to provide for the repair, improvement and maintenance of public highways, in any manner in its discretion deemed expedient, subject only to constitutional restrictions."

In *State ex rel. Jackson, Attorney General* v. *Middleton* (1939), 215 Ind. 219, 230, 231, 19 N. E. 2d 470, 475, this court, in discussing taxes levied for a public purpose, said:

> "It is implied in all definitions of taxation that taxes can be levied for public purposes only. This doctrine, now so firmly established in our system of constitutional law, is of comparatively recent origin and finds its justification in the due process clause of the Fourteenth Amendment to the Federal Constitution, adopted in 1868. It was nine years later,

however, before the United States Supreme Court applied the principle as a matter of substantive law. *Davidson* v. *Board of Admrs. of New Orleans* (1878), 96 U. S. 97. The exact line of cleavage between what is, and what is not, a public use, is somewhat difficult to mark. Some purposes readily align themselves on one side of the line as being clearly public in their nature, while others as readily fall on the other side as being obviously private, and there is a debatable ground between the two. The courts have never attempted to lay down with minute detail an inexorable rule distinguishing public from private purposes, because it would be impossible to do so. Such determination is primarily one for the legislative branch of the government and it can not be held to any narrow or technical rule of action. Courts will not intervene unless there is a plain departure from every public purpose which could reasonably be conceived. *Laughlin* v. *City of Portland* (1914), 111 Me. 486, 90 Atl. 318, 51 L. R. A. (N. S.) 1143; *Carmichael* v. *Southern Coal & Coke Co.* (1937), 301 U. S. 495, 81 L. Ed. 1245, 57 S. Ct. 868, 109 A. L. R. 1327."

Since we have heretofore said that the purposes of the act are public in character, we need not further discuss this issue. It is without merit.

Appellant next contends that the act in question provides for a pledge of the state's credit in allowing the advancement of funds and services by the State Highway Commission to the Toll Road Commission, in violation of Section 12, Article 11, of the Constitution of Indiana. This section provides:

"The State shall not be a stockholder in any bank, after the expiration of the present bank charter; nor shall the credit of the State ever be given, or loaned, in aid of any person, association or corporation; nor shall the State hereafter become a stockholder in any corporation or association."

It seems clear that this last-cited section of our Constitution has reference to the advancing of credit to private corporations or associations, and does not apply to an agency of this state.

Subsection (c) of Section 4 of Chapter 281 of the Acts of 1951 (§36-3204, Burns' 1949 Replacement [1951 Supp.]) is identical with Subsection (c) of §1204 of the General Code of Ohio, and Section 20 of Chapter 281 of the Acts of 1951 (§36-3220, Burns' 1949 Replacement [1951 Supp.]) is identical with §1220 of the General Code of Ohio. The Ohio Supreme Court, in the case of *State, ex rel.* v. *Defenbacher, supra* (pp. 282, 283 of 153 Ohio St., p. 520 of 91 N. E. 2d), in discussing a question identical with the one here raised, said:

> "The next question raised is whether Section 1220, General Code, contravenes the part of the provisions of Section 4 of Article VIII of the Constitution reading:

> " 'The credit of the State shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever.'

> "In the quoted portion of the foregoing section, the words 'individual association or corporation' are significant. This court has held that, while that portion of the section forbids the giving or loaning of the state's credit to or in aid of a private business enterprise, it does not prohibit such gift or loan to a public organization created for a public purpose. *State, ex rel. Leaverton* v. *Kerns, Aud.,* 104 Ohio St. 550, 136 N. E. 217. In the instant case, whether it is a corporation or not, the turnpike commission is certainly a public organization created for a public purpose. See *Cincinnati, W. & Z. Rd. Co.* v. *Commrs. of Clinton County, supra.*

> "It follows, therefore, that the advancement of funds on behalf of the commission by the highway department does not constitute a gift or loan of the credit of the state prohibited by this portion of Section 4 of Article VIII of the Constitution."

We feel that the reasoning in the last-cited case is sound.

Chapter 281 of the Acts of 1951 does not create a private corporation, and does not violate Section 12, Article 11, of the Constitution of Indiana.

Appellant contends that Chapter 281 of the Acts of 1951 violates Section 5, Article 10, of the Constitution of Indiana, in that the act creates a debt of the state. This section provides:

> "No law shall authorize any debt to be contracted, on behalf of the State, except in the following cases: To meet casual deficits in the revennue; to pay the interest on the State Debt; to repel invasion, suppress insurrection, or, if hostilities be threatened, provide for the public defense."

Appellant also contends that the act is a subterfuge to avoid Section 1, Article 13, of the Constitution of Indiana, which provides:

> "No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two per centum of the value of the taxable property within such corporation . . ."

Section 1, Article 13, applies solely to municipal corporations or to political corporations which are local and limited territorially. This section does not apply to the State of Indiana.

Section 5, Article 10, of the Constitution of Indiana, is binding upon the state. If the revenue bonds to be issued, as provided by the act here in question, are an indebtedness of the state, then Section 5 of Article 10 is violated.

Section 1 of Chapter 281 of the Acts of 1951 (§36-3201, Burns' 1949 Replacement [1951 Supp.]) provides in part:

"... and to issue toll road revenue bonds of the state payable solely from revenues. ..."

Section 2 of the act (§36-3202, Burns' 1949 Replacement [1951 Supp.]) provides:

"Toll road revenue bonds issued under the provisions of this act shall not be deemed to constitute a debt of the state or of any political subdivision thereof or a pledge of the faith and credit of the state or of any such political subdivision, but such bonds shall be payable solely from the funds pledged for their payment as authorized herein ... *All such revenue bonds shall contain on the face thereof a statement to the effect that the bonds, as to both principal and interest, are not an obligation of the State of Indiana, or of any political subdivision thereof,* but are payable solely from revenues pledged for their payment." (Our emphasis.)

From the above sections, it is clear that this act does not create a debt of the state; *Application of Oklahoma Turnpike Authority* (1950), 203 Okla. 335, 221 P. 2d 795, *supra; State, ex rel.* v. *Ferguson* (1951), 155 Ohio St. 26, 97 N. E. 2d 660, *supra; State* v. *Fla. State Improvement Commission* (1947), 159 Fla. 338, 31 So. 2d 548; nor can tax monies of the state be used to pay the revenue bonds. Bonds which are to be paid solely from the revenue collected from a project have been discussed by this court many times, and have been held not to create a debt of the municipal corporation involved, under Section 1, Article 13, of the Constitution of Indiana. *Property Owners, Inc.* v. *City of Anderson* (1952), 231 Ind. 78, 107 N. E. 2d 3; *Edwards* v. *Housing Authority of City of Muncie* (1939), 215 Ind. 330, 19 N. E. 2d 741; *Letz Mfg. Co.* v *Public Service Commission of Ind.* (1936), 210 Ind. 467, 4 N. E. 2d 194; *Underwood* v. *Fairbanks, Morse & Co.* (1933), 205 Ind. 316, 185 N. E. 118; *Bennett* v. *Spencer County*

*Bridge Comm.* (1938), 213 Ind. 520, 13 N. E. 2d 547, *supra; Voss* v. *Waterloo Water Co.* (1904), 163 Ind. 69, 71 N. E. 208; *Jefferson School Twp.* v. *Jefferson Twp. S. Bldg. Co.* (1937), 212 Ind. 542, 10 N. E. 2d 608; *Fox* v. *City of Bicknell* (1923), 193 Ind. 537, 141 N. E. 222.

We feel that the reasoning in the last-cited cases is equally applicable to the State of Indiana, and that therefore Chapter 281 of the Acts of 1951 does not violate Section 5, Article 10, of the Constitution of Indiana.

Appellant further argues that even if the bonds are payable from the revenue, the revenue covers real estate involved in the toll road projects. Section 4 (e) of the act (§36-3204, Burns' 1949 Replacement [1951 Supp.]) defines "revenues" as follows:

> "The word 'revenues' shall mean all tolls, rentals, gifts, grants, moneys, and all other funds and property coming into the possession or under the control of the commission by virtue of the terms and provisions hereof, except the proceeds from the sale of bonds issued under the provisions of this act."

Section 5 (i) of the act (§36-3205, Burns' 1949 Replacement [1951 Supp.]) authorizes and empowers the toll road commission:

> *"To acquire in the name of the state* by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the right of condemnation in the manner hereinafter provided, such public or private lands. . . ."

Section 7 of the act (§36-3207, Burns' 1949 Replacement [1951 Supp.]) provides that:

> "The commission is hereby authorized and empowered to acquire by purchase, whenever it shall

deem such purchase expedient, any land, property, rights, rights-of-way, franchises, easements and other interests in lands as it may deem necessary or convenient . . . *and to take title thereto in the name of the state.*"

From a reading of the last-two cited sections concerning real estate, it is seen that an interest therein is acquired in the name of the state, and not in the name of the toll road commission. The section of the act defining "revenues" refers solely to personal property coming into the possession and under the control of the commission, and it is out of the revenues that the bonds are to be paid.

From a reading of the entire act, it is readily seen that real estate of the State of Indiana is not subject to payment of toll road revenue bonds.

After considering all of the questions to which our attention has been called, we find that the act does not violate the Constitution of the State of Indiana.

Finding no reversible error, the judgment is affirmed.

NOTE.—Reported in 108 N. E. 2d 687.