JOHN D. MORGAN, Plaintiff and Respondent, *v.* FRANK MURRAY, Secretary of State of the State of Montana, Defendant and Appellant.

No. 9918.

Submitted June 4, 1958. Decided July 22, 1958.

328 Pac. (2d) 644.

Forrest H. Anderson, Atty. Gen., James A. Robischon, Asst. Atty. Gen., Robert L. Word, Jr., Sp. Asst. Atty. Gen., for appellant.

James A. Robischon, Asst. Atty. Gen., argued orally for appellant.

A. W. Scribner, Helena, amicus curae.

Michael G. Chilton, Helena, for respondent.

Michael G. Chilton, Helena, argued orally for respondent.

MR. CHIEF JUSTICE HARRISON:

Senate Bill No. 178 was introduced by Senators Cotton, McGowan, Durkee, Hibbs, Lehrkind and Grandey, on February 5, 1957.

It was passed by the Senate on February 22, 1957. On March 4, after having been read in the House of Representatives, it was passed and returned to the Senate to be enrolled. Governor J. Hugo Aronson approved the Bill on March 9, 1957, and it now appears as Chapter 197, Laws of 1957.

The Act is entitled: "An Act to Submit to the Vote of the People a Measure to Authorize the State of Montana to Become indebted in the Sum of Ten Million Dollars ($10,000,000.-00) in Excess of the Constitutional Limitation of Indebtedness Heretofore Incurred or Created and for Which the State of Montana is now Obligated, for the Construction and Equipping of Necessary Buildings, Other Permanent Improvements, Ac-

quisition of Necessary Grounds Therefor Over a Maximum Period of Twenty Years in and About the University of Montana, Consisting of the Six Units Thereof Now Existing, Namely, the Montana State University at Missoula, Montana State College at Bozeman, Montana School of Mines at Butte, Western Montana College of Education at Dillon, Eastern Montana College of Education at Billings, and the Northern Montana College at Havre as Well as the Experiment Stations for Agriculture, Engineering, Forestry and Mining, and the Agriculture Extension Service; Providing for the Issuance of Bonds in the Name of the State of Montana as Evidence of Such Indebtedness, and for the Sale Thereof, Prescribing the Form of Such Bonds and for a Levy of an Annual Tax Sufficient to Pay the Principal Thereof, and the Interest Accruing Thereon, Providing for a Referendum of This Act, Describing the Form of Ballots to be Used and the Duties of the Secretary of State of Montana Relative to the Submission of this Act to the Qualified Electors of the State, and Providing When This Act Shall Take Effect.''

*Section 1* authorizes the Legislative Assembly of the State of Montana, to direct the state board of examiners to issue bonds in excess of the constitutional debt limitation for the purpose of providing a fund for the construction and equipping of the six units of the Montana State University system, as well as certain experimental stations and extension services.

*Section 2* provides for the issuance of bonds by the board of examiners as may appear to the state board of education to be for the best interests of the state and of the University of Montana.

*Section 3* provides the interest the bonds shall bear, date the bonds shall be issued, maturity dates and other miscellaneous provisions.

*Section 4* provides for the form the bonds shall take.

*Section 5* provides for all moneys derived from the issuance and sale of the bonds to be paid into the state treasury to constitute a special fund for the construction and equipping of

buildings, plus improvements and additions to the six units of the University of Montana.

*Section 6* provides: "There shall be levied annually upon all property of the State of Montana subject to taxation an ad valorem tax upon each dollar of the taxable valuation of such property sufficient to pay the interest accruing on said bonds as such interest shall fall due, and the payment of the bonds as they serially become due, said levy, however, not to exceed one and one-quarter (1¼) mills per annum, until the indebtedness herein provided for shall have been fully paid and discharged. The tax when collected by the county treasurers of the several counties of the state shall be by them accounted to and paid into the state treasury of the State of Montana and by the state treasurer placed in the 'University of Montana second building bond interest and redemption fund' which fund shall be used exclusively for the payment of principal and interest on said bonds as the same become due."

*Section 7* provides for the referral of the Act to the people at the general election to be held in November 1958, and the form the ballot shall take.

John D. Morgan, the plaintiff herein, brought an action against Frank Murray, Secretary of State of the State of Montana, on March 13, 1958, for declaratory judgment, asking the court to declare Chapter 197, Laws of 1957, unconstitutional, illegal, null and void, upon numerous technical and constitutional grounds; and praying for a permanent injunction restraining the defendant from placing the referendum on the November ballot.

The district court of the first judicial district of the State of Montana, in and for the County of Lewis and Clark, the Honorable Victor H. Fall presiding, overruled a motion to quash and demurrer interposed by the defendant, represented by the attorney general of the State of Montana, and after defendant elected to stand on his demurrer, the court entered judgment in favor of the plaintiff and against the defendant, permanently enjoining the secretary of state from preparing or issu-

ing a ballot referring Chapter 197, Laws of 1957, to the people of the State of Montana.

From this judgment the defendant has appealed.

We enter into a consideration of the merits aided by all the well-known rules of constitutional construction. We also are fully aware that our office is not to test the wisdom of legislation or its propriety, or even its necessity. This may be said to have special pertinency in matters of fiscal policy and authority to levy taxes and appropriate the revenue. Nor are we concerned with the question of whether this project is based upon sound or unsound economic theories, or is the best means to achieve the desired results; that is not within the scope of judicial inquiry. So, the wisdom of imposing the debt of ten million dollars and imposing a property tax not exceeding one and one-quarter mills on all property within the State of Montana is of no concern to the court. All this was within the legislative responsibility and its power, provided it was not restricted by the Constitution.

Ours is a power-testing function; did the Legislative Assembly have the power to enact this legislation? It is the sworn duty of this court to enforce provisions of the Constitution irrespective of consequences.

While many facets of Chapter 197 have been ably explored by respective counsel, we feel that a determination of this case may be made solely on one ground, namely: that Chapter 197, Laws of 1957, is unconstitutional as being in violation of section 32, of article V, Montana Constitution, which, in part, provides: ''All bills for raising revenue shall originate in the house of representatives  *  *  *.''

This provision, that all bills for raising revenue shall originate in the House, was borrowed from the British House of Commons ''of which it is the ancient and undisputed right and privilege that all grants of subsidies and parliamentary aids shall begin in their House  *  *  *.'' 1 Story on the Constitution, section 874, page 639, 5th Ed. See also State v. Bern-

heim, 19 Mont. 512, 515, 49 Pac. 441; Anderson v. Ritterbusch, 22 Okl. 761, 98 Pac. 1002, 1005.

The Federal Constitution, art. I, section 7, clause 1, contained a provision identical to that part of section 32, article V, which reads: "All bills for raising revenue shall originate in the house of representatives * * *" a century before the same provision was brought into existence by our own organic law.

The leading federal pronouncement upon the interpretation of clause 1, section 7, article I, was made by Justice Story in United States v. Mayo, 1813, 26 Fed. Cas. No. 15,755, 1 Gall. 396, 397 wherein it was said: "It is argued, that the present is a case arising under the revenue laws of the United States, and that in an enlarged sense, these words embrace all laws, where any fine or forfeiture accrues to the government. I have no difficulty in rejecting this construction, as it would draw within its grasp every crime to which a pecuniary fine or forfeiture attaches by law, of whatsoever character it might be; and I might add, that not a single law inflicting a forfeiture would escape its comprehensive power. *The true meaning of 'revenue laws' in this clause is, such laws as are made for the direct and avowed purpose for creating and securing revenue or public funds for the service of the government. No laws, whose collateral and indirect operation might possibly conduce to the public or fiscal wealth, are within the scope of the provision."* Emphasis supplied.

Justice Story in his treatise on the Constitution, supra, section 880, again wrote as follows:

"* * * *the history of the origin of the power already suggested abundantly proves that it has been confined to 'bills to levy taxes' in the strict sense of the words, and has not been understood to extend to bills for other purposes, which may incidentally create revenue."* Italics ours.

This construction by Judge Story has been expressly approved by the Supreme Court in United States v. Norton, 91 U.S. 566, 23 L. Ed. 454; Twin City Nat. Bank v. Nebeker, 167 U.S. 196, 17 S. Ct. 766, 42 L. Ed. 134; Millard v. Roberts, 202

U.S. 429, 436, 26 S. Ct. 674, 50 L. Ed. 1090. See also The Nashville, Fed. Cas. Co. 10,023, 4 Biss. 188; Hubbard v. Lowe, D.C., 226 F. 135, appeal dismissed without opinion, 242 U.S. 654, 378 S. Ct. 12, 61 L. Ed. 547. The view taken by Judge Story in the United States v. Mayo, supra, has been specifically approved by the Montana court in State v. Bernheim, 19 Mont. 512, 49 Pac. 441, and in State v. Driscoll, 101 Mont. 348, 54 Pac. (2d) 571.

In 1875, United States Circuit Judge Johnson added somewhat to the proper application of clause 1, section 7, article I, when he said in United States ex rel, Michels v. James, Fed. Cas. No. 15,464, 13 Blatchf. 207, 208:

"Certain legislative measures are unmistakably bills for raising revenue. *These impose taxes upon the people, either directly or indirectly, or lay duties, imposts or excises, for the use of the government, and give to the persons from whom the money is exacted no equivalent in return, unless in the enjoyment, in common with the rest of the citizens of the benefit of good government. It is this feature which characterizes bills for raising revenue.* They draw money from the citizen; they give no direct equivalent in return." Italics ours.

This same application has been given approval by the Montana court in State v. Driscoll, supra, 101 Mont. 348, 364, 54 Pac. (2d) 571, 578, wherein Mr. Justice Anderson, while quoting from Northern Counties Investment Trust v. Sears, 30 Or. 388, 41 Pac. 931, 936, 35 L.R.A. 188, said: " 'A law which requires a fee to be paid to an officer, and finally converted into the treasury, of a county, *for which the party paying the fee receives some equivalent in return,* other than the benefit of good government which is enjoyed by the whole community, and which the party may pay and obtain the benefits under the law, or let it alone, as he chooses, does not come within the category of an act for raising revenue, and hence the objection made under this clause of the constitution is not well taken'." Italics ours. See also Yourison v. State of Delaware, 33 Del. 577, 140 A. 691; Stuard v. Thompson, Tex. Civ. App.

1923, 251 S.W. 277; Ennis v. State Highway Commission, 1952, 231 Ind. 311, 108 N.E. (2d) 687; Thierman Co. v. Commonwealth, 123 Ky. 740, 97 S.W. 366, 369.

Bills which have for their purpose some policing regulation, and are enacted pursuant to the state's police power, which incidentally levy or impose a tax or license fee, are not revenue raising measures in the strict sense of the word. See State v. Bernheim, supra; State v. Driscoll, supra, 1 Story on the Constitution, section 880.

The constitutional requirement that bills for raising revenue originate in the lower house is generally construed as having reference to the raising of money for defraying the expenses of the general government, where the revenue derived from the tax imposed is paid into the treasury of the exacting sovereign for its own general governmental purposes. Accordingly, laws delegating authority to local governmental units to levy and collect taxes for local purposes are not bills for "raising revenue" within the meaning thereof such as must originate in the lower house and such bills may be initiated in either branch of the legislature. Evers v. Hudson, 36 Mont. 135, 92 Pac. 462. See also 4 A.L.R. (2d) 984; Rankin v. City of Henderson, 7 S.W. 174, 9 Ky. Law Rep. 861; Gieb v. State, 31 Tex. Cr. R. 514, 21 S.W. 190; Mikell v. Philadelphia School District, 359 Pa. 113, 58 A. (2d) 339, 4 A.L.R. (2d) 962; Houston County v. Covington, 233 Ala. 606, 172 So. 882; Protest of Chicago, R.I. & P. Ry. Co., 137 Okl. 186, 279 Pac. 319.

A recent pronouncement on the subject made by Kentucky's high court in Dalton v. State Property and Buildings Commission, Ky. 1957, 304 S.W. (2d) 342, 350, is worthy of note, for the court held that if the Act merely continued in force existing taxes, without raising them or enacting new ones, it was not a revenue measure.

The appellant contends that Chapter 197 is not a bill for raising revenue for three reasons:

(1) It does not levy a tax but merely authorizes a subsequent Legislature to do so.

(2)   Assuming Chapter 197 raises some revenues, the revenue portion of the bill is merely incidental to the main purpose — the authorization to exceed the constitutional debt limitation contained in section 2, article XIII.

(3)   Assuming, arguendo, it is a revenue measure, the constitutional inhibition contained in section 32, article V, has no application to a measure which must be referred to the people, or if it does, it is merely a procedural directive and not a substantive interdict.

The first argument is clearly without merit for section 6 of the Act specifically provides that: ''There shall be levied annually upon all property of the State of Montana subject to taxation an ad valorem tax upon each dollar of the taxable valuation of such property sufficient to pay the interest accruing on said bonds as such interest shall fall due, and the payment of the bonds as they serially become due, said levy, however, not to exceed one and one-quarter (1¼) mills per annum   *   *   *.''

As far as the Act assumes to speak, on when the tax levy begins, it is quite apparent that the levy is authorized and will commence when the bill is finally acted upon by the people of the State of Montana. There is no necessity for further legislation to make the levy effective, nor is the Act phrased in words of future authorization.

The authorization to tax, the power to tax, are contained in the Act; specifically it is contained in section 6. No other interpretation appeals to common sense.

Appellant's second argument to the effect the Act had for its purpose the extension of the state's debt limit, which incidentally created revenue, is equally without merit. Appellant predicates this argument on the three Montana cases previously adverted to, and in particular upon Evers v. Hudson, supra, 36 Mont. 135, 92 Pac. 462.

Evers v. Hudson involved the constitutionality of an Act to establish free county high schools, providing for a tax to supply funds for the current expenses of such schools, and for bond

issues to raise money to build or purchase school property; such taxation applying only to the property of a county in which such a school was located. In answering the contention that the bill was constitutional being in contravention of section 32, article V, Mr. Justice Holloway, 36 Mont. at page 147, 92 Pac. at page 466, speaking for the court said:

"The only provisions of this act relating to taxation or revenue provide for a tax to supply funds for the current expenses of such schools (section 8), and for bond issues to raise money to build or purchase school property (section 9). In any event, the tax is only upon the property of the county, and the funds to be raised belong exclusively to the particular school for which they are raised. No part of the funds can by any possible means find its way into the state treasury, and the provisions of this section of the Constitution clearly referred to revenues of the state. This seems to have been the view entertained by this court in State v. Bernheim, for, after announcing the doctrine above, it is said: 'Tested by these rules, we are clearly of the belief that there is nothing in the context of the bill to justify the opinion that the motive of the Legislature in passing it was to raise revenue for the state'."

The court went on to say in 36 Mont. at page 148, 92 Pac. at page 466, that: "*This act does not assume to levy a tax, but at most only authorizes the county commissioners to make a levy.* In Harper v. Commissioners, 23 Ga. 566, it is said: 'Besides, the delegation of the power to tax and the laying of a tax are two things. This act does the first; the last, it does not do. The constitutional provision applies to an act which does the last, and does not apply to an act which does the first'." Italics ours.

Evers v. Hudson, supra, involved a mere authorization to tax. Furthermore, the tax, when enacted, operated on purely a local county basis; the funds were not deposited into the state treasury. Both State v. Bernheim, supra, and State v. Driscoll, supra, involved policing and licensing regulations which incidentally raised or created revenue; they have no application here.

Testing Chapter 197, by the case criteria set out at the beginning of this opinion, can we ascertain whether it was a revenue raising measure?

*First,* it is apparent that it is of a state-wide and not local application. The funds *are* deposited into the state treasury.

*Second,* it clearly raises the ad valorem tax rate by not exceeding one and one-quarter mills.

*Third,* there is no *quid pro quo* or legal equivalent tendered the taxpayer under Chapter 197; any benefits the taxpayer receives are those generally accruing to taxpayers throughout the state — better educational facilities.

*Fourth,* the Act has for its main purpose the raising of revenue for a public purpose. Looking through the form and viewing the substance of Chapter 197, we find that it has for its ultimate purpose the presentation of a request to the people asking them to authorize the board of examiners to issue ten million dollars worth of bonds, those bonds to be redeemed from a fund created by the levy of an ad valorem tax — the tax also to be authorized by the referral to the people.

What is a bond issue? Ultimately it is the present enjoyment and use of revenue which is earned and raised in the future. As was said in Wofford Oil Co. v. Smith, D.C., 263 F. 396, 403: "The impugned statute was designed, though under another guise, to raise revenue, as we have ascertained. The bill carrying it having originated in the Senate, where Mr. Craft introduced it, the act itself is void, because in its passage the Legislature ignored the mandate of the Constitution of Alabama (section 70) that 'all bills for raising revenue shall originate in the House of Representatives'."

To issue the bonds in Montana the Legislative Assembly must provide "for the levy of a tax sufficient to pay the interest on, and extinguish the principal of such debt within the time limited by such law for the payment thereof * * *." Mont. Const., art. XIII, section 2. The last-quoted constitutional provision clearly contemplates a revenue raising measure integrally connected to the debt authorization. Thus our Constitution

recognizes that bonded indebtedness is merely the present concentration of a state's revenue which revenue will not arise until the future. That is, of course, why the framers of that provision required the levy of a tax sufficient to pay the principal and interest on the created indebtedness.

The case most clearly analogous to the present one is Dumas v. Bryan, 35 Idaho 557, 207 Pac. 720. In that case the court had before it an act which authorized and directed the state board of education to remove the Normal School from one town to another, to change its name, to purchase property at the new town and to erect buildings thereon. Section 5 of the act provided:

"That there is hereby assessed upon taxable property within the state of Idaho, for the years 1921-1922, a tax of one-eighth mill on the dollar, and the proceeds thereof are hereby appropriated for the purpose of erecting the buildings herein provided for." Laws Idaho, 1921, chapter 110, section 5.

The Idaho Supreme Court decided that the Act under consideration was in violation of article 3, section 14, of the Idaho Constitution because the bill originated in the senate. At page 563 of 35 Idaho, at page 722 of 207 Pac., the court said:

"Section 5 of this removal act levies upon all of the taxable property within the state for the years of 1921-22 a tax of one-eighth of a mill on the dollar, the proceeds of such levy being appropriated for the purpose of erecting new buildings made necessary by this change of location. Counsel for respondent urge that the provisions of this act for raising revenue are merely incidental to the main object or purpose of the act, such main purpose being the removal of the normal school from Albion to Burley, and direct our attention to many cases holding that where the revenue part of an act is merely an incident and not the principal purpose for which it was enacted, the fact that it contains a provision for raising revenue as an incident to such purpose does not make it a revenue law within the meaning of this constitutional provision. * * *

"*Section 5 of this act is a measure for raising revenue; that*

*is, it is a revenue bill, or money bill, as those terms are usually used. It provides for levying a direct tax against all property in the state, for governmental purposes. It requires no argument to prove that the state maintains the Albion normal school in its governmental capacity. It will not do to say that this tax represents a mere incident to the main purpose of the bill, for this would be a mere evasion. Most revenue bills could in the same manner be made incidental. The amount of the tax levied is immaterial, for the Constitution requires that all bills for raising revenue shall originate in the House. This is as truly a tax levied for governmental purposes, as it would be if levied for the construction of a capitol building, and insane asylum, or for the support of any department of the state government, and therefore falls within the inhibition of article 3, section 14 of the Constitution.*" Italics ours. See also Hubbard v. Lowe, D. C., 226 F. 135.

Alabama has passed upon the question presented to this court in two recent decisions, both of which adhere to the general principles pronounced above. The first of these decisions is Opinion of the Justices, 259 Ala. 514, 516, 66 So. (2d) 921, 922. That case concerned Senate Bill 318, then pending in the Legislature, levying a tax on gross proceeds of sales of retail merchants in Franklin County, and a tax on the gross proceeds of amusement. Section 3 of the bill provided that the proceeds of the taxes would be used for the purpose of constructing and maintaining school buildings in the county and a county agricultural center. In holding that the bill constituted a bill to raise revenue which should have originated in the house, the court stated as follows in its opinion:

"The first clause of the section [Constitutional] mandates that 'all bills for raising revenue shall originate in the house of representatives.' * * *

"The first clause, however, is not so restrictive and the meaning accorded that clause is that any bill 'to levy a tax, as a means of collecting revenue' is a bill for raising revenue within its terms. Perry County v. Selma, M. & M. R. Co., 58 Ala. 546,

557. This interpretation was accorded the clause in Re Opinions of the Justices, 238 Ala. 289, 290, 190 So. 824, 825, where it was stated that 'Any bill * * * whose chief purpose is to create revenue, or to increase or decrease revenue * * * is one to raise revenue and must originate in the House of Representatives under the first sentence in Section 70 of the Constitution.'

"It seems clear that the purpose of the bill exhibited is to raise revenue generally in Franklin County by the assessment of privilege licenses and excise taxes for two special purposes: (1) for constructing and maintaining school buildings in Franklin County and (2) for the construction of an agricultural building for quarters for the governmental agencies in the county whose functions relate to agriculture. * * *

"This first clause of the constitutional section has been held not to apply to bills which brought into play the exercise of the police power of the state and raising revenue was an incidental purpose thereto. Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516; Houston County v. Covington, 233 Ala. 606, 172 So. 882; In re Opinions of the Justices, 233 Ala. 369, 136 So. 589; Kennamer v. State, 150 Ala. 74, 43 So. 482. It is perhaps well to observe that the act dealt with in the Kennamer case and those considered in 233 Alabama and 223 Alabama, supra, were held not merely to raise revenue but to require those deriving special benefits to bear those heavier burdens and was within the police power of the state. In the bill under consideration, however, no such status exists, since the licenses and taxes here to be imposed are general in nature to raise revenue for the two specific purposes mentioned. Therefore, it is designed to impose a general burden for special benefits rather than 'special burdens for special benefits' as observed in 223 Ala. 369, 370, 136 So. 589, 590, in explaining the rationale of the Kennamer case.

"So considered, our view is the bill should have originated in the House of Representatives."

To the same effect, see Opinion of the Justices, 260 Ala. 81, 68 So. (2d) 840. See also Wofford Oil Co. v. Smith, supra.

In line with the above authorities and our own observations on the question, we hold that Chapter 197 is a revenue raising measure beyond any reasonable doubt.

The third argument made by appellant should be subdivided into two parts: (1) Section 32, article V, is merely a procedural directive and not a substantive interdict. (2) Assuming, arguendo, section 32, article V, is a substantive interdict, it has no application here, where the law is ultimately referred to the people of the state.

The basis for appellant's argument stems from the history surrounding what now appears as section 32, article V of the Montana Constitution.

The constitutional requirement that all bills for raising revenue shall originate in the House of Representatives stemmed from a remedial outgrowth of the historic conflict between Parliament (i. e., Commons) and the Crown, whose ability to dominate the monarchially appointive and hereditary Lords was patent. See 1 Story, Constitution, section 874 et seq., 5th Ed.; 1 Cooley, Constitutional Limitations, pages 267, 268, 8th Ed.; 1 Sutherland, Statutory Construction, section 806, 3rd Ed. There was a measure of like justification for the insertion of the provision of article I, section 7, clause 1, of the Federal Constitution. At that time (1787) and thereafter until the adoption (in 1913) of the Seventeenth Amendment providing for the direct election of senators, the members of the United States Senate were elected for each state by the joint vote of both houses of the Legislature of the respective states, and hence, were removed from the people. The provision was first imported into the Constitution of this state in 1889. That was evidently done as a conforming gesture to the similar requirement of the Federal Constitution 100 years before.

It is argued (inferentially by citing Mikell v. Philadelphia School District, supra, 359 Pa. 113, 58 A. (2d) 339) that the reason for interpreting section 32, article V, as a substantive

interdict has vanished since both houses of the Legislative Assembly in Montana are elected by popular vote, and further the Senate has the power through that portion of section 32, article V, which reads:

"* * * but the senate may propose amendments, as in the case of other bills," to totally undo any revenue measure enacted by the House by supplanting it by an amendment of their own. The following language of the Mikells case, supra, 359 Pa. at page 122, 58 A. (2d) at page 344, clearly states this argument:

"There is a further effective barrier to the plaintiff's attack that the Act violates Art. III, Sec. 14, of the State Constitution. The clause concerning the place of origin of a bill for raising revenue is a procedural directive and not a substantive interdict. The legal distinction between directory and mandatory laws is as applicable to fundamental as it is to statutory law: Armstrong v. King, 281 Pa. 207, 216, 126 A. 263. The provision in question could not reasonably be deemed other than directory. It is not a denial of the Senate's power as a coordinate and essential branch of the legislature. Indeed, a further clause of the same Article and Section expressly confirms the Senate's own important function and discretion in the due enactment of revenue legislation. Specifically, 'the Senate may propose amendments as in other bills': Art. III, Sec. 14. In pursuance of its appropriate power in such regard, the Senate may amend a House revenue bill even to the extent of striking out everything following the enacting clause and substituting therefor a bill of its own creation. It follows, therefore, that a revenue statute, once enacted, is not inherently defective simply because the bill originated in the Senate and was passed first by that body. And, inasmuch as the particular constitutional provision is merely directory, any failure to follow it in practice must be objected to timely. If that is done, as on a point of order, the objection would, of course, be efficient to block the passage of the measure. The members of the legislature are to be presumed to intend due respect for all constitutional re-

quirements concerning the enactment of statutes. Such provisions, however, are mandatory only 'So far as the duty and the cinsciences of the members of the legislature are involved * * * ': Kilgore v. Magee, 85 Pa. 401, 412, where the presently material assault on the statute there involved was that 'It was not read at length on three different days in each or either house of the General Assembly': See Art. III, Sec. 4.''

Conceding the wisdom and logic of the Pennsylvania court's thesis, under the law existing in that state, are we allowed, in view of Montana's Constitution, to embrace the same thesis? We do not believe so.

Article III, section 29, provides: ''The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.''

Article V, section 32, does not have any express wording which would remove it from the mandatory and prohibitory clause of Article III, section 29. The Constitution states its injunction in the form of ''shell.'' .

Furthermore, we are guided in arriving at this result by three previous Montana decisions—all were unanimous; they were never impeached: State v. Bernheim, supra; Evers v. Hudson, supra; State v. Driscoll, supra. As stated in Hubbard v. Lowe, supra, 226 F. 135, 140: ''If these courts had not assumed that a revenue bill of Senate origin was a nullity, why spend so much time in proving that the act under consideration was not such a bill?

By Montana case law it has been consistently assumed at least that section 32 of article V, was a substantive interdict.

If this court were to embrace the logic of the Mikell's decision, it would seem that such logic would be equally applicable to the provisions of section 20, article V of our Constitution which provides: ''The enacting clause of every law shall be as follows: 'Be it enacted by the Legislative Assembly of the State of Montana'.''

But this court has consistently held that the enacting clause of a bill goes to the substance of that bill; it is not merely pro-

cedural. Vaughn & Ragsdale Co. v. State Board, 109 Mont. 52, 56, 59, 96 Pac. (2d) 420; State ex rel. Peyton v. Cunningham, 39 Mont. 197, 200, 103 Pac. 497.

Thus, had the Assembly omitted the enacting clause provided for in our Constitution, we would have been enjoined to declare the Act unconstitutional. The injunction contained in section 20 of Article V is no more imperative than that contained in section 32 of article V; both must be obeyed.

Nor does section 32, article V, make any exception as to bills which must be referred to the people. The *origin* of revenue bills must be the same, just as all bills to be enforceable must contain the enacting clause in section 20 of article V. No distinction exists between statutes enacted by the people or those enacted by the Legislature. State ex rel. Evans v. Stewart, 53 Mont. 18, 161 Pac. 309; State ex rel. Goodman v. Stewart, 57 Mont. 144, 151, 187 Pac. 641.

For the foregoing reasons we hold that Chapter 197, Laws of 1957, was illegal, unconstitutional and void, for the reason that it was a revenue bill which originated in the Senate, contrary to the interdiction of section 32, article V, Montana Constitution. The judgment is affirmed.

MR. JUSTICES BOTTOMLY and ADAIR, concur.

MR. JUSTICE ANGSTMAN, (dissenting).

I do not agree with the foregoing opinion. Chapter 197 is not a bill for raising revenue within the meaning of section 32, article V, of our Constitution. As yet Chapter 197 does nothing in and of itself. All the cases relied on in the majority opinion are cases where the Legislature had passed an act which had become effective. Here all that has been done is to seek authority to exceed the constitutional limit of indebtedness by submitting the issue to the people as provided in section 2 of article XIII of our Constitution. That is the main purpose of Chapter 197.

The matter of raising revenue is but incidental and the case

on this point is ruled by Evers v. Hudson, 36 Mont. 135, 92 Pac. 462; State v. Driscoll, 101 Mont. 348, 54 Pac. (2d) 571; and Rosencranz v. City of Evansville, 194 Ind. 499, 143 N.E. 593.

Furthermore the adoption of the initiative and referendum provisions of our Constitution in 1906 (section 1, article V), had the effect of working an implied modification of some of the other provisions of our Constitution. That amendment added another legislative authority, viz., the people of the state.

The purpose of section 32, article V, was to have revenue measures originate in the house which is composed of the greater number of people. As was said in Northern Counties Investment Trust v. Sears, 30 Or. 388, 401, 41 Pac. 931, 935, 35 L.R.A. 188: "Bills for raising revenue are required to have their origin in the lower branch of the legislature because it is the more numerous of the two bodies, and, being oftener renewed by elections, presumptively it more closely and directly represents the people. Cooley, Const. Lim. 157."

The Supreme Court of Idaho in Dumas v. Bryan, 35 Idaho 557, 563, 207 Pac. 720, 722, stated the purpose of this requirement to be as follows: "The purpose of incorporating it into the fundamental law is that laws for raising revenue are an exercise of one of the highest prerogatives of government, and confer upon taxing officers authority to take from the subject his property by way of taxation for the public good, a burden to which he assents only because of it being necessary in order to maintain the government, and the people have accordingly reserved the right to determine this necessity by that body of the Legislature which comes most directly from the people, the House of Representatives."

But where, as here, the proposed bill is referred directly to the people themselves for their approval or rejection at the polls, every purpose of such a provision as that found in section 32, article V, is met and it is wholly immaterial where the proposed bill originated. If approved by the people it becomes their own bill as effectively as if it originated as an initiative measure.

If rejected by them then it will have no vitality at all and what the Legislature has done will be of no further concern to anyone.

It is my view that section 32 of article V of our Constitution was intended to apply to such bills only where the entire legislative process is based upon action of the two houses of the Legislative Assembly, i. e., the bill originating and terminating in the Legislative Assembly, and has no application to referendum measures such as that involved here.

It would serve no useful purpose for me to consider whether Chapter 197, Laws of 1957, is valid or invalid in other respects.

MR. JUSTICE CASTLES, (dissenting).

I agree with the views expressed by MR. JUSTICE ANGSTMAN, in his dissent herein.