DA 09-0270

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 454

FALLON COUNTY, a political subdivision
of the State of Montana, by and through
its Board of Commissioners,

        Plaintiff and Appellee,

  v.

STATE OF MONTANA, DEPARTMENT OF REVENUE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Fallon, Cause No. DV-2008-028
Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Michele R. Crepeau (argued), C.A. Daw, Courtney Jenkins, Special
Assistant Attorneys General, Department of Revenue, Helena, Montana

        For Appellee:

            Michael J. Uda, Marc G. Buyske (argued), Suzanne F. Bessette,
Doney Crowley Bloomquist Payne Uda P.C., Helena, Montana

Argued and Submitted: November 18, 2009

Decided: December 31, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    The Department of Revenue (DOR or Department) appeals the order of the Sixteenth Judicial District Court granting summary judgment to plaintiff Fallon County. Fallon County challenged DOR's authority to issue rules pertaining to locally-created "tax increment financing districts" (TIFDs). The District Court ruled that DOR did not have the statutory authority to adopt such rules. The Department filed a timely appeal. We reverse and remand.

## ISSUES

¶2    A restatement of the issues is:

¶3    Did the District Court err when it determined that DOR did not have authority to adopt rules relating to increment financing laws?

¶4    Did the District Court err when it determined that the rules adopted by the DOR relating to the administration and supervision of tax increment financing laws exceeded the Department's rulemaking authority?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    As this case was decided on summary judgment and the parties agree that no material facts are in dispute, we need not recite a detailed factual background; rather, we provide only the facts necessary to understand the issues and our ruling.

¶6    In March 2008, the Department published proposed administrative rules pertaining to tax increment financing industrial districts and adopted those rules on July 17, 2008. In August 2008, Fallon County filed a complaint seeking a judgment declaring the administrative rules invalid. Shortly after DOR answered Fallon County's complaint,

2

Fallon County moved for summary judgment. The County argued that DOR did not have the "clear and specific statutory authority" under either Title 7[1] or Title 15[2] of the 2007 Montana Code necessary to adopt the rules. It further asserted that adoption of the rules "violate[d] the division in the Montana Constitution between the power of local units of government and the state executive branch." In November 2008, DOR also filed a motion for summary judgment arguing that it had the necessary authority to adopt the administrative rules.

¶7 The District Court held a hearing on the motions on March 12, 2009, at the conclusion of which the court granted Fallon County's motion. The court filed its Order Granting Summary Judgment on April 16, 2009. The Department filed a timely appeal.

## STANDARD OF REVIEW

¶8 We review a district court's decision to grant summary judgment de novo and apply the same criteria applied by the district court. We must determine whether the district court applied the law correctly. *Mont. Trout Unlimited v. Mont. Dept. of Nat. Resources and Conserv.,* 2006 MT 72, ¶ 17, 331 Mont. 483, 133 P.3d 224 (citation omitted).

## DISCUSSION

¶9 *Did the District Court err when it determined that DOR did not have authority to adopt rules relating to increment financing laws?*

---

[1] The statutes creating TIFDs are currently codified in Title 7, chapter 15, part 42, MCA, specifically at §§ 7-15-4282 through -4299, MCA.
[2] The current statutes setting forth DOR's authority vis-à-vis administration and enforcement of revenue laws are codified in Title 15, chapter 1, part 2, MCA.

¶10 The District Court determined at the close of the summary judgment hearing that, based on the 2007 statutes in effect at the time, the DOR had exceeded the authority conferred upon it by statute and, therefore, the rules it adopted in 2008 were invalid and void *ab initio*. The court recited caselaw supporting the conclusion that administrative agencies "have only those powers specifically conferred upon them by the Legislature" and that "[a] rule may not be adopted unless 'a statute granting the agency authority to adopt rules *clearly and specifically* lists the subject matter of the [authorized] rule' " or "the rule . . . relates to a subject matter or agency function that is *clearly and specifically* included in a statute to which the grant of rulemaking authority extends." Section 2-4-305(3), MCA (2007) (emphasis in original). The court concluded that § 7-15-4285, MCA (2007), defined the DOR's duty in response to its receipt of a "tax increment provision" and that nothing in Title 7, chapter 15 of the Montana Code granted rulemaking authority to DOR as it pertains to TIFDs.

¶11 On appeal, the Department maintains that it has clear authority to adopt rules pertaining to the administration and supervision of tax increment financing laws. DOR argues that § 15-1-201(1), MCA (2007), provides the Department with "general supervision over the administration of the assessment and tax laws of the state . . . and over any officers of municipal corporations having any duties to perform under the laws of this state . . . ." DOR avers that the statute does not limit the Department's authority to "tax laws which are found in Title 15." The Department posits that "tax increment financing laws" by their nature are "tax laws" over which the DOR has administrative, supervisory and rulemaking authority.

4

¶12 In response, the County asserts that, as a legislatively-created agency, DOR's authority is limited to those powers specifically conferred upon it by the Legislature. Fallon County argues that the statutes authorizing and defining TIFDs and their operations do not give DOR authority to adopt rules pertaining to them. Moreover, Fallon County submits that nothing in Title 15, chapter 1, part 2 of the Montana Code setting forth the authority of DOR to administer and enforce revenue laws grants DOR rulemaking authority over TIFDs. Relying on *Morgan v. Murray*, 134 Mont. 92, 328 P.2d 644 (1958) and several extra-jurisdictional cases, the County opines that TIFD laws are not "revenue laws" in that they "do not assess, equalize, levy or create revenue for government." Rather, the County asserts, the TIFD laws merely "permit the 'segregation and application' of monies already collected through property tax mechanisms."

¶13 While this case revolves around DOR's rulemaking authority, a short explanation of the purpose of the relevant statutes provides context. In 1959, the Montana Legislature adopted "urban renewal" laws to allow municipalities to undertake redevelopment and rehabilitation of blighted areas within their boundaries. These laws authorized incorporated cities and towns to use "public money" to prevent or eliminate blight. These early urban renewal laws are currently codified at §§ 7-15-4201 through -4281, MCA. In 1974, the Legislature enacted a new program that municipalities could use to finance urban renewal projects. This program was called "tax increment financing." Sections 7-15-4282 through -4299, MCA. Under the tax increment financing statutes,

5

municipalities[3] can establish tax increment financing districts. There are four types of districts that qualify for tax increment financing—industrial, technology, aerospace transportation and technology districts, and urban renewal plans. Section 7-15-4282, MCA.

¶14 These laws allow local governments to freeze the tax base at a given year's level and "capture" incremental increases in property taxes for a public purpose. Theoretically, once public improvement begins to occur in the TIFD, private investors move into the area and begin paying taxes. These new taxpayers create an increased fund of tax dollars, which is the "increment" referred to in "tax increment financing districts." This "increment" can also be created by an increase in tax values applied to the entire municipality. Recognizing that DOR requires notice of the creation of a TIFD, a municipality that creates a TIFD must file a certified copy of the urban renewal plan or the district ordinance creating an industrial, technology or aerospace transportation and technology district, with the Department. Section 7-15-4284, MCA (2007). DOR must "immediately upon receipt" then calculate and report the "base, actual and incremental taxable values" of the involved property to the municipality and other affected taxing bodies. Section 7-15-4285, MCA (2007). The "base taxable value" means the actual taxable value of all taxable property within the district prior to the effective date of a tax increment financing provision. Section 7-15-4283(4), MCA (2007). The "actual taxable value" means the taxable value of taxable property at any time, as calculated from the

---

[3] Defined as any incorporated city or town, county, or city-county consolidated local government. Section 7-15-4283(8), MCA.

assessment roll last equalized. Section 7-15-4283(1), MCA (2007). And the "incremental taxable value" is the amount, if any, by which the actual taxable value at any time exceeds the base taxable value of all property within the district subject to taxation. Section 7-15-4283(5), MCA (2007).

¶15 Thereafter, the "base taxable value" continues to be collected and distributed per statute as it was before the TIFD was created, but the municipality that created the TIFD may "capture" the incremental tax dollars and use them to pay for costs associated with the TIFD development or improvement project. The municipality may collect this incremental revenue for the life of the TIFD, i.e. 15-35 years. Section 7-15-4292, MCA (2007). In the absence of a TIFD, this incremental tax revenue would be distributed to various recipients in accordance with applicable law. In other words, the tax-generated monies dedicated to fund a narrowly-defined local project, a TIFD, are redirected from originally-intended recipients, such as the state's school system, fire departments or road projects, to the municipality. Given this, the question before us is whether the DOR, through rulemaking, has the right to oversee the creation of TIFDs which retain a portion of property taxes at the expense of other property tax recipients.

¶16 The DOR, created by the Legislature in 1971 and codified at § 2-15-1301, MCA, has broad authority over the revenue generated through taxation. Title 15, chapter 1, part 2 of the 2007 Montana Code describes the Department's authority and responsibility pertaining to revenue.

> The department has general supervision over the administration of the assessment and tax laws of the state . . . and over any officers of municipal corporations having any duties to perform under the laws of this state

7

relating to taxation to the end that all assessments of property are made relatively just and equal, at true value, and in substantial compliance with law. The department may make rules to supervise the administration of all revenue laws of the state and assist in their enforcement.

Section 15-1-201(1)(a), MCA (2007).

The department shall confer with, advise, and direct officers of municipal corporations concerning their duties, with respect to taxation, under the laws of the state.

Section 15-1-201(2), MCA (2007).

The department shall collect annually from the proper officers of the municipal corporations information, in a form prescribed by the department, about the assessment of property, collection of taxes, receipts from licenses and other sources, expenditure of public funds for all purposes, and other information as may be necessary and helpful in the work of the department. It is the duty of all public officers to fill out properly and return promptly to the department all forms and to aid the department in its work. The department shall examine the records of all municipal corporations for purposes considered necessary or helpful.

Section 15-1-201(3), MCA (2007).

¶17    In addition to Title 15, chapter 1, part 2, MCA, the Legislature has prescribed other relevant duties to DOR in Title 15, chapter 10, part 4, MCA. Section 15-10-420, MCA (2007), sets forth the procedure for calculating and imposing mill levies.[4] This statute establishes a formula for taxing entities to use to calculate allowable mills. A factor in the formula is the "value of newly taxable property" for the current year. The statute describes what "newly taxable property" includes and what it does not. Notably, "newly taxable property" does not include "an increase in value that arises because of an increase in the incremental value within a tax increment financing district." Section

---

[4] A mill levy is the number of dollars a taxpayer must pay for every $1,000 of assessed value of property.

15-10-420(3)(b), MCA (2007). The statute further explains how newly taxable property is impacted by the change of a TIFD boundary and the termination of a TIFD. Section 15-10-420(4), MCA (2007). Section 15-10-420(11), MCA (2007), allows DOR to adopt rules to implement the statute, including rules affecting the method for calculating the percentage of change in valuation for purposes of determining newly taxable property in a governmental unit.

¶18 As indicated by these statutes, DOR has the authority to assess and collect taxes to be used for multiple purposes. In addition to these statutes, the Legislature has implemented other statutes imposing specific tax-related duties on DOR. For example, in § 15-1-121, MCA (2007), DOR is instructed how to appropriate payments from the general fund to local governments; in other words, it is instructed as to the proper method for calculating the "base entitlement share payment" to each local government. The entitlements identified in this statute go into a share pool and then get distributed to local governments by the Department. Section 15-1-121(5)(a), MCA (2007). The Department is required to consider any TIFDs in existence at the time entitlement shares are distributed and to distribute funds accordingly. Section 15-1-121(6)(b), MCA (2007).

¶19 These statutes read and interpreted together lead us to conclude that the TIFD funds are inextricably entwined in revenue assessment, collection, distribution and enforcement—all of which are responsibilities of DOR. As such, we conclude DOR has the authority under §§ 15-1-201 and 15-10-420, MCA (2007), to promulgate the rules it adopted in 2008 addressing locally-created TIFDs. Moreover, the challenged rules are not over-reaching. Among other things, the DOR rules require municipalities to notify

DOR of newly-created or amended TIFDs by February 1 of the calendar year following the creation or amendment of the TIFD. Admin. R. M. 42.19.1402(3) (2008). In imposing this deadline, the Department concluded that it had adequate time to certify the taxable value of the property located within the TIFD by the deadline established in § 15-10-202, MCA (2007), i.e., the first Monday in August. The rules also set out the information municipalities must supply to DOR to enable the Department to certify base taxable values for each type of newly-created TIFD or amended or changed TIFDs. Admin. R. M. 42.19.1403 through .1406 and .1410 (2008).

¶20 Contrary to the assertions of the County, *Morgan* does not preclude our interpretation of the statute. As argued by the County, the *Morgan* Court borrowed the definition of "revenue" laws from *U.S. v. Mayo*, 26 Fed. Cas. 1230, Case No. 15755 (C.C.D. Mass. 1813), in which Justice Story opined that "revenue" laws "are made for the direct and avowed purpose for creating and securing revenue or public funds for the service of the government." *Morgan*, 134 Mont. at 97, 328 P.2d at 648. Given that TIFD laws have an undisputed and direct impact on the creation and securing of revenue by "freezing" the tax base at a given year's level and redirecting all incremental increases from the originally-intended recipient, we do not interpret *Morgan* as prohibiting our interpretation.

¶21 We note that the County opined and the District Court agreed that the Department may have identified legitimate concerns involving DOR's authority to oversee the creation and administration of TIFDs, but that those concerns must be addressed by the Legislature and not the courts. As indicated above, the District Court issued its ruling in

this case based on the statutes in effect in 2007. In 2009, the Legislature made a notable revision to the statute upon which the District Court relied heavily. Section 7-15-4285, MCA, now reads that the DOR "shall, upon receipt of a *qualified* tax increment provision" (emphasis added) calculate and report the base, actual and incremental taxable values to the municipality and other affected municipalities. This change appears to support our ruling here. The rules adopted by DOR are designed to obtain the information necessary for the Department to confirm that the local government has created a "qualified" TIFD and the information necessary for the Department to certify base taxable value. For these reasons, we conclude the District Court erred in determining that DOR did not have the authority to adopt rules relating to increment financing laws.

¶22 Having concluded that the Department had statutory authority to adopt TIFD-related rules, we need not address the County's contention that the adoption of such rules violated the division in the Montana Constitution between the powers of municipalities and the DOR.

### CONCLUSION

¶23 For the foregoing reasons, we reverse and remand this matter to the District Court for reinstatement of the rules adopted by DOR on July 7, 2008.

/S/ PATRICIA O. COTTER

11

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

/S/ KENNETH R. NEILL
District Court Judge Kenneth R. Neill
sitting for Justice John Warner


Justice Jim Rice, dissenting.

¶24 The Department of Revenue (DOR) has promulgated rules to regulate the establishment of tax increment financing districts (TIFDs) by local governments. Admin. R. M. 42.19.1401 through .1412 (2008). Notwithstanding the good sense embodied within DOR's rules, a basic principle of administrative law has been violated: an agency may not engage in rulemaking, a quasi-legislative act, unless the Legislature specifically grants the agency such authority. *Bell v. Dept. of Licensing*, 182 Mont. 21, 22, 594 P.2d 331, 332 (1979) (quoting *Anaconda Co. v. Dept. of Revenue*, 178 Mont. 254, 257, 583 P.2d 421, 422-23 (1978)). Because neither DOR nor the Court can point to such authority, I would affirm the District Court's holding.

¶25 The statutes governing TIFDs are located under the title of "Local Government" at §§ 7-15-4282 through -4299, MCA (2007). This is significant by reason of § 7-15-4205, MCA, which provides that to the extent the statutes outside of Title 7 are inconsistent with their provisions, the TIFDs statutes "shall be controlling." In addition to the superiority of the TIFDs statutes, it is critical to note that the Legislature specifically

12

granted rulemaking authority within Title 7 when it intended the agency to adopt rules, *see e.g.* §§ 7-14-102(3), 7-21-3715, 7-22-2120(1)(d), MCA, but did not do so with respect to TIFDs, *see e.g.* §§ 7-15-4282 through -4299, MCA. The design of Title 7 and the Legislature's determination not to grant rulemaking authority for purposes of TIFDs demonstrates, without more, that no such rulemaking authority exists here. *See Darby Spar, Ltd. v. Dept. of Revenue,* 217 Mont. 376, 379, 705 P.2d 111, 113 (1985) (describing legislative inaction as indicative of intent).

¶26 However, ignoring this lack of authority under Title 7, the DOR looks to a different title of the code, namely, Title 15. The provision cited by DOR as establishing its rulemaking authority is § 15-1-201, MCA, which provides broadly and generally that "[t]he department may make rules to supervise the administration of all revenue laws of the state and assist in their enforcement." Nonetheless, under the Montana Administrative Procedure Act (MAPA), agencies possess the authority to make rules only if the Legislature "*clearly* and *specifically* lists *the subject matter* of the rule as a subject upon which the agency shall or may adopt rules." Section 2-4-305(3)(a), MCA (emphasis added). Using even the most imaginative of interpretations, nothing within § 15-1-201, MCA, is clear and specific with respect to TIFDs. The DOR implicitly agrees, as evidenced by its repeated description of the statute as providing a "broad" and "general" grant of rulemaking authority in its briefing to this Court. Petr.'s Br. 4, 13, 17, 21 (July 17, 2009). Such an expansive reading of § 15-1-201, MCA, would grant rulemaking authority to DOR for every conceivable matter within its broad jurisdiction, a result inconsistent with MAPA's specificity requirements. Further, the Legislature's

13

express delegations of rulemaking authority to DOR throughout the code for various designated purposes would be rendered superfluous.

¶27 The DOR also attempts to save its regulations by citing to a subsection of MAPA which permits agencies to engage in rulemaking authority if "the rule implements and relates to *a subject matter* or an agency function that is *clearly and specifically included* in a statute to which the grant of rulemaking authority extends." Section 2-4-305(3)(b), MCA (emphasis added). In making its argument, however, DOR focuses only on the supportive words "implements" and "relates," while conveniently ignoring that the sentence continues and again requires the "subject matter" to be "clearly and specifically included in a statute." Section 2-4-305(3)(b), MCA. Again, the DOR cannot point to any such language here. It is not within the province of this Court to consider certain words of a statute at the expense of avoiding others. Section 1-4-101, MCA. Thus, again, the broad and general reference to "all revenue laws" within § 15-1-201, MCA, falls far short of providing clear and specific rulemaking authority, as it designates no subject matter as required by § 2-4-305(3)(b), MCA. Were we to read a broad and general statute as providing authority to enact rules for TIFDs, we would *sub silentio* run astray of this Court's jurisprudence regarding the non-delegation doctrine. *See e.g. In re Pelia*, 249 Mont. 272, 276-77, 815 P.2d 139, 142 (1991) ("If the legislature fails to prescribe with reasonable clarity the limits of power delegated to an administrative agency, *or if those limits are too broad*, its attempt to delegate is a nullity." (Emphasis added.)) (citations omitted).

14

¶28 Implicitly acknowledging that DOR's arguments fail, the Court offers its own reasoning that TIFDs are "inextricably entwined" with DOR responsibilities and cites § 15-10-420, MCA, as authority under which DOR may promulgate its current TIFDs rules. Opinion, ¶¶ 17, 19. The Court does not explain that DOR itself has never cited to § 15-10-420, MCA, as the source of its rulemaking authority in promulgating these rules and, thus, this appears to be nothing more than a *post hoc* justification for DOR's rules. However, this justification fails also. Section 15-10-420, MCA, governs the procedure for calculating and imposing mill levies, not TIFDs. While TIFDs are a potential variable within a mill levy calculation, to conclude that such an obscure connection provides the specific authority necessary for agency rulemaking about the creation of TIFDs is an untenable application of MAPA's requirements. *See* § 2-4-305(3), MCA.

¶29 Agency rulemaking authority is a matter of legislative grace, and to the extent the Legislature has not clearly and specifically vested the agencies with such power, the Legislature remains the sole lawmaking entity. Section 2-4-305(3), MCA; *see also* Mont. Const. art. III, § 1 (delineating separation of powers). DOR has been given no such grant of authority to make rules governing the creation of TIFDs. The DOR could certainly ask the Legislature to visit the issue, but it is not the role of this Court to provide authority where none exists.

¶30 I would affirm.

/S/ JIM RICE